Ralph W. Dorn v. Commissioner.
Ralph W. Dorn v. Commissioner
Docket No. 6253.
United States Tax Court
1947 Tax Ct. Memo LEXIS 143; 6 T.C.M. (CCH) 848; T.C.M. (RIA) 47198; July 11, 1947
*143 Amounts of petitioner's gross income for each taxable year 1935 to 1942, inclusive, determined from the evidence. Held, that part of the deficiency for each taxable year 1937 to 1942, inclusive, is due to fraud with intent to evade the tax. Held, further, that petitioner's failure to file income tax returns for taxable years 1935, 1936, 1937, 1938, 1939 and 1941 was not due to reasonable cause and the action of the Commissioner in imposing delinquency penalties is sustained. Maurice J. McCarthy, Esq., for the petitioner. Byron M. Coon, Esq., for the respondent. *144 BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioner's income tax and penalties as follows: Years
Liability
Assessed
Deficiency
25% Penalty
50% Penalty
1935
$ 336.00
$ 336.00
$ 84.00
$ 168.00
1936
328.68
328.68
82.17
164.34
1937
253.70
253.70
63.43
126.85
1938
198.60
198.60
49.65
99.30
1939
206.20
206.20
51.55
103.10
1940
408.05
408.05
204.03
1941
1,255.48
1,255.48
313.87
627.74
1942
2,405.13
$77.15
2,327.98
1,163.99
Totals
$5,391.84
$77.15
$5,314.69
$644.67
$2,657.35
The Commissioner explained his determination of deficiencies and penalties in a statement attached to the deficiency notice as follows: "This determination of your income tax and penalty liability has been made upon the basis of information on file in this office. "The following wages and business income received by you have been included in taxable income under the provisions of section 22 of the Internal Revenue Code and similar provisions of prior Acts: 1935
$9,500.00
1936
9,380.00
1937
9,100.00
1938
9,100.00
1939
9,100.00
1940
9,100.00
1941
9,100.00
1942
9,100.00"
*145 Petitioner by appropriate assignments of error contests the correctness of respondent's determination of the deficiencies and penalties. In his statement of facts in support of his assignments of error petitioner alleges as follows: "1. He asserts that his income for the year 1935 did not exceed the amount of $1,800.00 and part of the same was for wages received in the amount of $400.00. "2. Secondly, that his income for the year 1936 did not exceed the amount of $1,200.00 and part of which was for wages in the sum of $280.00. "3. That his net income for the year 1937 did not exceed the $500.00. "4. That his net income for the year 1938 did not exceed $700.00. "5. That his net income for the year 1939 did not exceed $450.00. "6. That his net income for the year 1940 did not exceed $275.00. "7. That his net income for the year 1941 did not exceed $500.00. "8. That his net income for the year 1942 did not exceed $650.00." Respondent in his answer denies petitioner's assignments of error and affirmatively alleges fraud for each of the taxable years. Findings of Fact Petitioner is an individual residing during the taxable years 1935 to 1942, both inclusive, at *146 various addresses in Los Angeles, California. Petitioner married Nelita Capucetti Dorn in 1916 and to this marriage one son was born in 1920. Petitioner and his wife were divorced in 1921 but due to illness of their son petitioner's wife maintained a common home with him for some years afterwards. They were remarried in 1940 but were subsequently divorced again. Petitioner filed no income tax returns, either separately or jointly with his wife, for any of the taxable years 1935, 1936, 1937, 1938, 1939 and 1941 but filed a timely joint return with his wife for the taxable year 1940 and a timely separate return for the taxable year 1942. On the return for 1940 under Schedule D petitioner reported total receipts of $3,558.27 "From Business or Profession" and stated under "Questions" on the last page of the return his business to be that of the "chiropractic business." Under "Other Business Deductions" petitioner took deductions totaling $3,833.05, leaving an alleged net operating loss for the year of $274.78. No other income from any other source was reported on the return as being received by petitioner during 1940. On the return for 1942 petitioner reported gross income from the *147 "chiropractic business" of $1,324 and an alleged net operating income therefrom of $943.08. No other income from any other source was reported on the return as being received by petitioner during 1942. Respondent determined that during each of the taxable years 1935 to 1942, both inclusive, the petitioner received gross income from wages and business in at least the following amounts: 1935
$ 9,500.00
1936
9,380.00
1937
9,100.00
1938
9,100.00
1939
9,100.00
1940
12,658.27
1941
9,100.00
1942
10,424.00 and that after all allowable deductions, other than personal and dependency exemptions, the petitioner had in each year taxable net income in at least the following amounts: 1935
$ 9,500.00
1936
9,380.00
1937
8,075.00
1938
7,350.00
1939
7,450.00
1940
8,725.22
1941
9,100.00
1942
10,045.29
On the basis of the aforesaid gross and net incomes, the respondent determined deficiencies in income tax and 50 per cent additions thereto for fraud ( section 293 (b) of the Internal Revenue Code and similar provisions of the prio revenue acts) for each of the taxable years and for the years for which no returns were *148 filed by petitioner, respondent asked 25 per cent for failure to file returns ( section 291 of the Internal Revenue Code and similar provisions of the prior revenue acts) all in the amounts set forth in our preliminary statement above. In 1942 petitioner became a licensed chiropractor and in that year he opened an office located at 3041 West Seventh Street, Los Angeles, California, for the alleged purpose of carrying on his profession as a chiropractor. Petitioner was graduated from a chiropractic college in 1939, having attended school during the years 1936 through 1939 but he was unable to obtain a license to practice chiropractics prior to 1942 by reason of arrests and convictions in 1937, 1939 and 1941 for practicing medicine without a license growing out of the performance of abortion operations. In each of the first two arrests petitioner was found guilty and paid a $500 fine and was placed on probation for some period. One arrest and conviction in 1941 was later dismissed in the Superior Court; however, another 1941 conviction was affirmed by the Superior Court. Arrests of and complaints against petitioner for abortion operations were made in 1943 and *149 1944 but were subsequently dismissed. Petitioner in 1940, though not at the time a licensed chiropractor, opened a place of business at 4040 Wilshire Boulevard, known as the Wilshire Health Service and employed one Dr. G. F. Lake, a licensed chiropractor, to operate the business until such time as petitioner could obtain a license himself. Petitioner paid Dr. Lake from $125 to $150 per month for services rendered the Wilshire Health Service in this connection. This business was operated by petitioner for only a few months, apparently closing it out some time in the year 1941. The income reported by petitioner in his 1940 return was allegedly derived from this business. During the taxable years 1935 and 1936 petitioner received gross income from wages as a steam engineer and other activities in the sum of $1,800 in 1935 and $1,500 in 1936. During and throughout each of the taxable years here involved, beginning with the year 1937, petitioner, under the alias of Dr. R. W. Snook, represented himself to be a doctor of medicine and under such guise conducted an extensive business as an abortionist, performing such operations either in the homes of the patients or in quarters rented *150 and maintained by petitioner specifically for that purpose. The full extent of petitioner's activity in and the full amount of income received by him from his abortion business in each of the taxable years beginning with 1937 is not shown since petitioner kept no books or records relating to this phase of his earnings. Clarence L. Krause, a special agent of the Intelligence Unit, Bureau of Internal Revenue, and acting in such capacity in 1943 investigated the income tax liability of the petitioner Ralph W. Dorn. In explaining at the hearing of this proceeding how the $9,100 was arrived at which the Commissioner has determined to be gross income received by petitioner from his abortion practice in each of the taxable years, he stated as follows: "The actual computation of the $9100.00 business income for each of the years was made on the basis of the statement of Dorn's receptionist in his office that $35.00 for five days a week for 52 weeks was received by Dorn, which multiplies out to $9100.00 a year. It is the opinion of the Department that the average amount of treatments or appointments was five a week and that the average price was $35.00 which is exactly $9100.00. I took *151 that as his average." Nelita Capucetti Dorn had a bank acount with the Security-First National Bank of Los Angeles at Sixth and Alvarado and another account with the same bank at its Sixth and Oxford Branch No. 113. During the years 1938 to 1941 she made deposits in these accounts in total amounts for each year as follows: 6th and
6th and
Year
Alvarado
Oxford
Total
1938
$ 782.00
$ 782.00
1939
2,556.50
2,556.50
1940
9,932.56
$1,854.70
11,787.26
1941
2,463.84
2,463.84
$13,271.06
$4,318.54
$17,589.60
The deposits which were made in these accounts by Mrs. Dorn were moneys given her by petitioner Ralph W. Dorn and were checked out to pay family and other expenses. Mrs. Dorn had no separate income of her own. In addition to the deposits shown above, it was proved at the hearing that petitioner was accustomed to carry considerable sums of cash on his person. We find from the evidence that petitioner received gross income as follows: 1935
$ 1,800.00
1936
1,500.00
1937
4,550.00
1938
7,800.00
1939
7,800.00
1940
11,358.27
1941
7,800.00
1942
9,124.00
A part of the deficiency for each of the taxable years *152 here involved, except the years 1935 and 1936, is due to fraud with an intent to evade taxes. Petitioner has not shown that his failure to file income tax returns for the taxable years 1935, 1936, 1937, 1938, 1939 and 1941 was due to reasonable cause and not due to willful neglect. Petitioner's income tax returns for the taxable years 1940 and 1942 were filed with the Collector of Internal Revenue for the Sixth District of California. Opinion BLACK, Judge: It is, of course, well understood in cases of the sort we have here that the burden of proof is on petitioner to show that the deficiencies in income tax which the Commissioner has determined are wrong. The burden of proof is on the Commissioner to sustain the fraud penalties which he has imposed. The applicable statutes are printed in the margin. [1]
*153 This is a case in which there is a sketchy, confused and unsatisfactory record. Perhaps such is almost inevitable in a case of this sort. Respondent has established to our satisfaction fraud on the part of petitioner for all the taxable years, beginning with the year 1937. We are not convinced that he has established fraud for the years 1935 and 1936 for reasons which we will state later. But while we are convinced that respondent has established fraud for the taxable years above mentioned, we find great difficulty in making a finding of how much gross income petitioner received for the taxable years 1937 to 1942, inclusive. This is not a case which might be properly termed a "lack of evidence" case. There is much evidence from 21 witnesses who testified at the hearing, including petitioner himself. Our problem is to weigh this evidence and then determine petitioner's gross income for each of the taxable years. We have done this and after having done it have made our findings of gross income for the respective taxable years as stated in our findings of fact. It represents the best we can do with the unsatisfactory record which we have before us. As has been heretofore explained, *154 the basic feature of the Commissioner's determination is that petitioner should be held to have received $9,100 in each of the taxable years as gross income from abortion operations which he performed. Respondent's witness, Clarence L. Krause, an Internal Revenue Agent testified how this was done and we have given the details of his method in our findings of fact and this need not be repeated here. Respondent's principal testimony at the hearing to support the finding of the Internal Revenue Agent was Mrs. Betty Walton who testified that she was employed by petitioner as a sort of receptionist beginning around June 1, 1937 and running until the end of the year 1939. The substance of the testimony of this witness was that she collected from the patients for these abortion operations and turned the money over to petitioner. She said that there were a few of the operations where the charge was $25 but the average fee was $35; that there were some cases where no fee at all was charged and that she did not recall any larger fee than $35. The witness also testified that her best estimate was that there were five of these illegal operations each week during the time she was employed as receptionist. *155 Upon the strength of this testimony we have found that the average fee for these illegal operations was $30 each in view of the witness' testimony that petitioner only collected $25 for some of them and that for some he did not make any collection at all. We have made our calculation on the basis of this testimony that petitioner performed five of these operations a week beginning June 1, 1937, and extending through all the taxable years from that date. The witness, Betty Walton, was not employed later than 1939 but we think respondent has established that petitioner's activities in these illegal operations extended on through the taxable year 1942, the last year we have before us. We have felt that the evidence does not warrant a finding that petitioner performed these illegal operations in the earlier part of the period which we have before us. In 1935 and 1936 he was either a student in chiropractic school or working as a steam engineer and there is no convincing evidence that he was engaged in performing these illegal operations in those years. In fact, on the evidence which we have before us, we think we would not be warranted in fixing an earlier date for the performing of *156 these illegal operations than June 1, 1937. Therefore, we have found that his income for 1935 was $1,800 and for 1936, $1,500. Petitioner testified that for these years his sole earnings were from his work as a steam engineer carried on as a part time activity in 1936 while he was in chiropractic school and that his earnings from this and all other sources did not exceed $1,800 in 1935 and $1,500 in 1936. For 1937 we have found that his gross income was $4,550 which is based upon the finding that he was performing these illegal operations from June 1, 1937 to the remainder of the year. During the remainder of the taxable years he was performing the illegal operations in all of them. Respondent's witness, Betty Walton, testified that petitioner paid her $25 a week for her services as receptionist and paid $40 per month rent for the apartment where these illegal operations were performed. Respondent's witness, Clarence L. Krause, Internal Revenue Agent, testified that in arriving at petitioner's net income for taxation the Internal Revenue Bureau has allowed as deductions the amounts which petitioner paid Betty Walton for her services as receptionist and also the amounts which were *157 paid as rents on the apartment which petitioner used for his patients. There is no statement attached to the deficiency notice which shows the details of the Commissioner's computations but we presume that Internal Revenue Agent Krause stated correctly when he said that the foregoing amounts have been allowed as deductions in determining petitioner's net income for the years where such deductions were applicable. At any rate no issue is raised about them by petitioner and we raise none. The evidence is clear that during all the taxable years petitioner was an unmarried man until he remarried his divorced wife in 1940. Also that he had a son during all the taxable years to whom he furnished the principal support and who was born in 1920. As to the issue of fraud we think respondent has proved his case as to all the taxable years except 1935 and 1936. As to those two taxable years, as we have already said, petitioner was either working as an engineer or was in chiropractic school and his income was undoubtedly small from his part time earnings as a steam engineer. He testified that his failure to file a return for the years 1935 and 1936 was due to the fact that he considered his *158 personal exemptions allowed by law as greater than his income. While this may not have been correct, nevertheless, we do not think that the Commissioner has met his burden of proof to sustain fraud in 1935 and 1936. Therefore, we have found there was no fraud for these two years. The situation as to the other years beginning with June 1, 1937, is different. Respondent has clearly proved that in those years petitioner, operating under the alias Dr. R. W. Snook, performed many illegal abortion operations for fees and that he did not report these fees for taxation. Just how many of these illegal operations petitioner performed in the taxable years we have before us, beginning with June 1, 1937, respondent was unable to establish. He was, however, able to prove an approximation which under all the circumstances has seemed to be a reasonable basis upon which to make our findings and we have done so in the manner heretofore explained. In M. Rea Gano, 19 B.T.A. 518, a case in which we held the taxpayer was guilty of fraud, among other things we said: "A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable *159 excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose." So say we in the instant case. We think the Commissioner has clearly sustained his burden of proving fraud to the extent we have heretofore enumerated. See Louis Halle, 7 T.C. 245. The 25 Per Cent Penalties Petitioner filed no returns for the taxable years 1935 through 1939, both inclusive, and the taxable year 1941. It is so stipulated. The law provides in such case that respondent add delinquency penalties for each year for which there is a failure to file. In a computation of the deficiencies the delinquency penalties must be added, except as to the two years when petitioner filed a return, since the 1935 penalty mandatorily follows a failure to file under such circumstances and since with respect to other taxable years the petitioner has not proven that his failure was due to reasonable cause and not due to willful neglect. Decision will be entered under Rule 50. Footnotes
1. Revenue Act of 1934: SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * [Sec. 22 (a) of the Revenue Act of 1934, supra, and Sec. 22 (a) of the Revenue Acts of 1936 and 1938 are identical.] SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended. [Sec. 293 (b) of the Revenue Act of 1934, supra, and Sec. 293 (b) of the Revenue Acts of 1936 and 1938 are identical.] Revenue Act of 1935: SEC. 406. FAILURE TO FILE RETURNS. In the case of a failure to make and file an internal-revenue tax return required by law, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, if the last date so prescribed for filing the return is after the date of the enactment of this Act, if a 25 per centum addition to the tax is prescribed by existing law, then there shall added to the tax, in lieu of such 25 per centum: 5 per centum if the failure is for not more than 30 days, with an additional 5 per centum for each additional 30 days or fraction thereof during which failure continues, not to exceed 25 per centum in the aggregate. Revenue Act of 1936: SEC. 291. FAILURE TO FILE RETURN. In case of any failure to make and file return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * * [Sec. 291 of the Revenue Act of 1936, supra, and Sec. 291 of the Revenue Act of 1938 are identical.] Internal Revenue Code: SEC. 22. GROSS INCOME. (a) General Definition. - * * * [Sec. 22 (a) of the Revenue Act of 1934, supra, and Sec. 22 (a) of the Internal Revenue Code are identical.] SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * *
(b) Fraud. - * * * [Sec. 293 (b) of the Revenue Act of 1934, supra, and Sec. 293 (b) of the Internal Revenue Code are identical.] SEC. 291. FAILURE TO FILE RETURN. * * *
[Sec. 291 of the Revenue Act of 1936, supra, and Sec. 291 of the Internal Revenue Code are identical.] Regulations 86 (promulgated under the Revenue Act of 1934): Art. 22 (a)-1. What included in gross income. - Gross income includes in general compensation for personal and professional services, business income, profits from sales of and dealings in property, interest, rent, dividends, and gains, profits, and income derived from any source whatever, unless exempt from tax by law. * * * Regulations 94 and 101 (promulgated under the Revenue Acts of 1936 and 1938): Art. 22 (a)-1. * * * [Art. 22 (a)-1 same as Art. 22 (a)-1 of Regulations 86, supra.] Regulations 103 (promulgated under the Internal Revenue Code): Sec. 19.22 (a)-1. * * * [Sec. 19.22 (a)-1 is substantially the same as Art. 22 (a)-1 of Regulations 86, supra.]↩