Leo E. Lufkin v. Commissioner.
Lufkin v. Commissioner
Docket No. 26458.
United States Tax Court
1951 Tax Ct. Memo LEXIS 307; 10 T.C.M. (CCH) 196; T.C.M. (RIA) 51059; March 2, 1951
*307 Solomon Sandler, Esq., for the petitioner. William C. W. Haynes, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in income tax and has imposed fraud penalties as follows: Year
Deficiency
Penalty
1942
$ 2,978.75
$1,489.38
1943
7,019.95
3,509.97
1944
1,506.36
753.18
1945
1,656.65
828.33
Total
$13,161.71
$6,580.86
The respondent has made claim for increases in the amounts of the deficiency and penalty for the year 1943 under section 272 (e) of the Code. In the foregoing schedule, the increases have been included in the amounts there set forth of the deficiency and penalty for 1943. There are two issues in this proceeding: (1) Whether the petitioner was the owner of the fishing vessel, "Catherine," during the years 1942, 1943, 1944, and 1945, and, therefore, was taxable on the owner's share of the income from the operation of the boat. (2) If petitioner was required to include the income from the operation of the boat "Catherine" in his gross income for the taxable years, whether his failure to do so was due to fraud with intent to evade tax. *308 The petitioner filed his returns with the collector for the district of Massachusetts. Findings of Fact The facts which have been stipulated are so found. Petitioner is a resident of Gloucester, Massachusetts. His education included one year of college. He has held responsible positions with various fisheries in Gloucester, including the position of manager of the Gloucester branch of the Atlantic Coast Fisheries Company. On August 8, 1936, Patrick J. Kelly transferred the title to the fishing vessel, "Catherine," to petitioner as the owner of record. The purchase price for the boat was $3,200. On the same day petitioner borrowed $2,000 from the Gloucester National Bank. As security for the loan petitioner's parents, Annie C. Lufkin and George E. Lufkin, pledged a bank book of a savings account with another bank, in which account there was a balance in the amount of $7,318.01. An additional $1,200 was borrowed by petitioner from the Gloucester National Bank shortly thereafter with the bank book as security. The total of $3,200 borrowed from the bank was paid to Kelly for the fishing boat. Kelly gave a bill of sale to petitioner as sole owner. On September 28, 1936, petitioner *309 obtained a license from the United States Bureau of Customs for the use of the "Catherine" in mackerel fishing. The petitioner's name appeared on the license form as the sole owner of the boat, and he made a sworn statement that he was the sole owner of the vessel. On July 30, 1938, petitioner executed a mortgage of the "Catherine" to his mother and father as security for the collateral which they had put up in 1936 to secure the loan by petitioner from the bank. The amount of the mortgage was $3,050, which was the balance due the bank on the loan. The mortgage was recorded in the office of the collector of customs on August 9, 1938, at which time it was stated that "Leo E. Lufkin * * * had taken and subscribed the oath required by law, and had sworn that he was the sole owner of the vessel called the Catherine." On August 18, 1938, petitioner mortgaged the "Catherine" to R. J. Ederer Company as security for a note of $5,535.15, which petitioner had given to the company for supplies used on the "Catherine" since its purchase from Kelly. This mortgage was recorded with the collector of customs on August 19, 1938, at 1:18 p.m. At 1:16 p.m. on August 19, 1938, petitioner recorded *310 the discharge of the mortgage on the "Catherine" which he had given to his parents. He did not, however, pay any money to his parents. Petitioner mortgaged the "Catherine" to his parents again on August 19, 1938. This mortgage was subordinated to the mortgage to R. J. Ederer Company and was recorded on August 22, 1938. Payment of the mortgage to R. J. Ederer Company was made from the earnings of the "Catherine." The payments were by check on a checking account of the Gloucester National Bank in the name of the "Catherine." All the checks were signed by petitioner, who was the only one entitled to sign checks on the account; petitioner's mother and father could not sign checks on the account. Payments on the mortgage were made over a period extending from August 1938 until the mortgage was finally discharged on November 27, 1943. Petitioner exercised all the rights, duties, and prerogatives of the owner of the "Catherine." He hired the captains of the vessel. He purchased the gear and supplies for the "Catherine." The captain of the vessel would report to and confer with petitioner. Petitioner paid the vessel excise tax for the years 1942, 1943, 1944, and 1945 to the City of Gloucester, *311 declaring that he was the owner of the boat. Petitioner made up the settlement sheets upon the basis of which the seamen received their shares of the income from the operations of the "Catherine." He and the captain of the boat made arrangements for the sale of the fish caught by the "Catherine" to various fisheries. Petitioner received the gross proceeds from the sale of the fish caught by the "Catherine." Checks given by the purchasers of the fish in payment were received by petitioner and endorsed by him in the great majority of cases. Petitioner held himself out as the owner of the vessel. Petitioner's parents never held themselves out as owners of the vessel, nor did they ever exercise any of the rights, duties, or prerogatives of an owner. Petitioner opened a joint savings account with his wife in the Cape Ann Savings Bank in Gloucester on December 7, 1942, with a deposit of $900. Petitioner was unable to explain the source of eleven deposits totaling $5,174, made to this account from May 1943 to October 1945. On May 13, 1943, petitioner's father died at the age of approximately seventy-one. Prior to his death, petitioner's father was employed in a fishery in Gloucester. *312 His salary did not exceed $35 a week. Petitioner's father left no will, and his estate consisted of a bank account held jointly by himself and his wife. On July 6, 1945, petitioner's mother died. She had two bank accounts in the Cape Ann Savings Bank at the time of her death. There were no deposits made in the first of these bank accounts from 1942 until her death. Two withdrawals of $100 each were made during this time. In the second bank account two deposits were made - one on August 4, 1943, in the amount of $1,000 and the other on May 24, 1944, in the amount of $320. Petitioner inherited the house in which his mother had lived and the bank accounts. His mother's estate was appraised by an officer appointed by the Probate Court. In the inventory of the estate, the two bank accounts in the Cape Ann Savings Bank, the house, and some personal effects were listed. The "Catherine" was not listed as part of the estate. The "Catherine" was sold by petitioner to John Hudder in 1946 for $4,500. On December 1, 1947, petitioner was indicted in the district court of Massachusetts for the evasion of his income taxes for the years 1942, 1943, and 1944. On March 15, 1949, petitioner was convicted, *313 on his plea of guilty, and was sentenced to serve two months in prison and to pay a fine of $100 on these charges. Petitioner was the owner of the boat "Catherine" in 1942, 1943, 1944, and 1945. The petitioner was entitled to receive the owner's share of the earnings from the operation of the boat "Catherine" during the taxable years. The petitioner received gross and net income as the owner's share from the operation of the boat "Catherine" as follows: Year
Gross Income
Net Income
1942
$21,414.08
$11,249.07
1943
23,069.73
14,446.19
1944
9,708.28
5,976.34
1945
11,453.01
5,127.33
Part of the deficiency in income tax for each of the years 1942, 1943, 1944, and 1945 was due to fraud with intent to evade tax. Opinion The first question in this proceeding is whether the petitioner was the owner of the fishing vessel, "Catherine," during 1942, 1943, 1944, and 1945. [1] If the petitioner was the owner of the boat, there is a second issue, namely, whether his failure to report in his gross income the owner's share of the earnings of the boat in each of the taxable years was due to fraud with intent to evade tax. *314 The petitioner contends that his mother and father were the owners of the boat "Catherine," and that the owner's share of the income from its operation was received by them. The evidence is contrary to the petitioner's contention. Upon all of the evidence, it has been found as a fact that the petitioner was the owner of the "Catherine" during the taxable years, and that he received the owner's share of the income derived from its operation. The petitioner introduced no evidence other than his own uncorroborated statements. The evidence introduced by the respondent shows that the petitioner possessed and exercised all of the powers of ownership from the time of the purchase of the boat from Patrick J. Kelly in 1936 until the sale thereof to John Hudder in 1946. The bill of sale which was executed by Kelly named the petitioner as the sole owner of the "Catherine." The petitioner contends that the money which was used to purchase the boat was borrowed by his parents from the Gloucester National Bank. This contention is not supported by the evidence. The evidence shows that the petitioner's mother and father merely provided the security for the loan. The loan was made to the petitioner, *315 and he was liable for its payment. Furthermore, the petitioner gave his parents a mortgage on the boat in 1938 which was, evidently, to secure them in the event that the Gloucester National Bank resorted to the collateral which the parents of the petitioner had pledged to secure the bank's loan. Later in 1938, petitioner gave another mortgage on the boat to R. J. Ederer Company to whom he owed $5,535.15 for supplies which he had purchased for the "Catherine," and the payments which were made in discharge of this mortgage were made by the petitioner out of the earnings of the "Catherine." After the purchase of the boat, the petitioner obtained a license from the Bureau of Customs to employ the "Catherine" in mackerel fishing. In securing the license, he swore that he was the sole owner of the boat. No other person was listed as owning any share of the boat. Also, the petitioner paid the vessel excise tax on the "Catherine" to the City of Gloucester during the years involved, and he signed the checks to the Government for the amounts withheld from the wages of the seamen of the "Catherine." The petitioner acted as the owner in the operation of the "Catherine." He purchased the gear *316 and supplies for the vessel; he hired the captains of the boat and gave them their orders; he decided when the boat was to be hauled out of the water for repairs; with the captain, he arranged for the sale of the fish caught by the "Catherine"; and he received the proceeds from the sale of the fish. There are in evidence the sworn statements of the petitioner, which he made at various times to the Bureau of Customs, that he was the sole owner of the boat. There is no evidence that either or both of the petitioner's parents were the owners of the "Catherine," and that the petitioner was only an agent for the owner or owners, or that they ever received any of the income from its operation. There is no evidence to show that they reported the income from the operation of the boat in their income tax returns for any of the taxable years involved, and the records of their bank accounts do not show that they received such income. After their respective deaths, the "Catherine" was not listed as part of the assets of their respective estates. There is no evidence that any of the rights, duties, or powers of ownership were ever exercised by either one of the petitioner's parents. It is *317 held that petitioner was the owner of the fishing vessel, "Catherine," during 1942, 1943, 1944, and 1945, and that the owner's share of the income from the operation of the vessel in each one of the taxable years is includible in petitioner's gross income for each of the taxable years. There remains the question of whether the failure of the petitioner to include the income from the operation of the "Catherine" in his gross income for the taxable years was due to fraud with intent to evade tax. The burden of proof on this issue rests on the respondent. Section 293 (b) of the Internal Revenue Code; M. Rea Gano, 19 B.T.A. 518. Upon examination of all of the evidence, it is concluded that the respondent has met his burden of proof. The evidence shows that the petitioner received income in substantial amounts during the years in question which he failed to report in his income tax returns. The petitioner has rested his case entirely upon his denial of ownership of the fishing vessel. He introduced no evidence other than his own uncorroborated statements to rebut the evidence which was offered by respondent. The record contains the testimony of disinterested *318 witnesses as to actions of petitioner, which shows that he exercised the powers of ownership, and documentary evidence which shows that the petitioner was the owner of the vessel, including documents containing sworn statements of the petitioner that he was the owner. Moreover, petitioner made no protest of innocence when he was indicted in 1947 for evasion of income taxes for 1942, 1943, and 1944, and for filing false and fraudulent returns for those years. He pleaded guilty in that proceeding and was fined and sentenced by the court to serve two months in jail. Although we do not place sole reliance on this factor as dispositive of the issue for the years 1942, 1943, and 1944, as was done in an analogous situation in United States v. Bower, - Fed. Supp. - (D. Ct. Tenn., January 9, 1951), we conclude that it is additional evidence of the fraudulent intent of petitioner to evade taxes for those years. The evidence is clear and convincing that the failure of the petitioner to report income in each of the taxable years was due to fraud with intent to evade tax. It is held that part of the deficiency in petitioner's income tax for each of the years 1942, 1943, 1944, and 1945 was due *319 to fraud with the intent to evade tax. Decision will be entered for the respondent. Footnotes
1. The parties are in agreement in respect to the net income derived from the operation of the "Catherine" during the years involved.↩