M. Rea Gano, Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Docket No. 28421. Promulgated April 8, 1930.

*Albert Hubschman, Esq.*, for the petitioner.
*E. C. Lake, Esq.*, for the respondent.

522

OPINION.

VAN FOSSAN: In the evidence in this case we find numerous conflictions. We are confronted with irreconcilable divergences between statements of the same witness respecting the same subject matter on different occasions. Sworn statements in affidavits differ widely from sworn testimony given at the hearing, and both differ widely from the book records and the sworn returns. In some instances three or four or more varying explanations appear where only one can be correct. Such inaccuracy and unreliability, to characterize it by no harsher term, can lead only to one conclusion. We are able to place little credence in petitioner's testimony, even when uncontradicted, unless supported by documentary corroboration. This conclusion, consequent on the duty we have of weighing the evidence and the credibility of witness, has led to certain necessary omissions as to facts alleged by petitioner and apparently supported by some testimony. These omissions will be discussed in the *seriatim* consideration of the several issues which follows.

Respondent has added to petitioner's income for 1920 the amount of $51,000 on account of dividends actually paid to him but alleged by him to have belonged to his wife. It is undisputed that the stock stood on the Gano Moore Co. books in the name of Ethel P. Gano, but it is contended that the petitioner was the real owner thereof. It is established that although in 1913 Ethel P. Gano originally contributed $8,000 out of $11,200 paid in to the predecessor corporation, Gano Moore & Co., all of the preferred stock issued on account of said payment was retired in 1915, four years before the Gano Moore Co. was organized. It also appears that at the time the preferred stock was issued to Ethel P. Gano all of the common stock in Gano Moore & Co. was issued to petitioner, who made no contribution; that on January 22, 1920, when 1,275 shares of stock in the Gano Moore Co. were issued to petitioner's wife, Ethel P. Gano, 400 shares of the stock were issued to Irene P. Gano, wife of Charles C. Gano. Irene P. Gano had made no investment in Gano Moore & Co. Again, on the same day, September 15, 1921, when Ethel P. Gano transferred to petitioner all of her stock in the Gano Moore Co., Irene P. Gano also transferred to her husband all stock standing in her name. Ethel P. Gano and Irene P. Gano took no part whatever in the management of the company and always voted by proxy. The check for the dividends here in question was drawn

to M. Rea Gano and deposited by him in his account. The check covering dividends on the Irene P. Gano stock was similarly drawn to the husband, Charles C. Gano. The books of the company recorded the payment of the dividend to M. Rea Gano and likewise recorded the payment to Charles C. Gano of the dividend on the stock held in the name of Irene P. Gano.

For the year 1921 respondent has added to petitioner's income the sum of $70,125 on account of dividends of Gano Moore Co. paid to Ethel P. Gano on the same stock involved in the above transaction during 1920. The checks covering these several dividends in 1921 were made to Ethel P. Gano and deposited in her account. However, as to the sum of $31,875 paid March 16, 1921, it appears from the books of Gano Moore Co. that on the same day the exact sum of $31,875 was paid to Gano Moore Co. by Ethel P. Gano and by that company placed to the credit of M. Rea Gano. A similar treatment was given the sum of $10,000 paid to Irene P. Gano, the same being credited to her husband Charles C. Gano.

This singular parallelism of treatment, which existed throughout most of the period involved and appears in most of the stock and dividend transactions, is so marked that it can not be dismissed as mere coincidence. It evidences a concerted procedure. It negatives the presence of separate considerations in the original issuance of the stock to the wives and discounts the contention of petitioner that the issuance to his wife was solely traceable to a settlement agreement consequent on a dispute between himself and wife. No such alleged consideration appears as between Charles C. Gano and wife, nor, if assumed, would it account for the subsequent transfer by both wives to their husbands on the same date, some months later. On the whole record of the stock transfers set out in the findings of fact and, giving such weight and credence to petitioner's testimony as from all circumstances we believe it deserves, we are of the opinion that petitioner was throughout the entire time the real owner of the stock and that the dividends were taxable to him.

In reaching this conclusion we have given due consideration to the facts advanced by petitioner in support of his position. The notation on the back of the check was obviously a necessary explanatory direction to the company's bookkeeper. The payment by petitioner of the various accounts due for taxes on his wife's property was neither unusual nor of probative weight to demonstrate independent and absolute ownership of the stock by her. The fact that petitioner's wife reported the dividends as her income was but a natural step entirely consistent with petitioner's apparent plan to reduce his own tax liability.

In his return for 1920 petitioner deducted $15,477.04 alleged loss on a sale of stocks and oil leases to L. J. Costello. In the findings of

fact we have been obliged to omit any findings as to this transaction because of the utter confusion of the record, the conflicting statements of witnesses and the lack of any certainty as to what actually happened. In his petition petitioner alleges that he sold 60 shares of Gano Moore Co. stock to L. J. Costello in 1919 at $100 per share; that this agreement was rescinded and a supplemental agreement entered into in 1920 fixing the price at $50 per share; that "in order to induce the said L. J. Costello to consummate the second contract" petitioner gave her his investments in various companies which he had acquired at a cost of $12,447.04, and that both parties knew the last-mentioned investments were worthless. In an affidavit of June 24, 1926, petitioner states he sold the entire lot for $3,000 and that the oil and syndicate stocks were worthless in 1919. Later, in the same paper, he states that he gave L. J. Costello the additional stocks "out of good will and graciousness." In an affidavit of July 23, 1926, L. J. Costello states that she bought the Gano Moore Co. stock in 1919 for $3,000 and that petitioner gave her the other stocks during 1920. There was introduced in evidence a sheet of paper bearing the Gano Moore Co. letterhead, on which was written the following notation in the handwriting of petitioner:

July 1, 1920.

The attached envelopes contain worthless investments and were all sold together with 60 shares stock of Gano Moore Company to L. J. Costello for the lump sum of $3,000 during 1920. These are the property of L. J. Costello as per agreement. Consult with C. W. Van Artsdalen.

M. REA GANO.

The date "July 1, 1920" at the top of the sheet and the figures "1920" in the body of the note are in a different ink from the remainder of the note and were apparently added at some date subsequent to the writing of the remainder, the figures "1920" in the body of the note having been written over the figures "1919," which "1919" was in the same ink as the remainder of the note. The alteration of the note was not explained.

But regardless of what may have been the fact as to the transaction between Gano and L. J. Costello—and the record defies understanding, the fact of the worthlessness of the stock is not established. Worthlessness is a fact to be established as are other facts in dispute. It is not a sufficient showing for petitioner to say the stock was worthless. Such a characterization, standing alone, proves nothing. The taxpayer must give us the facts on which he predicates the conclusion and these facts must bring to the Board a conviction that the petitioner's conclusion was correct.

Petitioner deducted $6,419 as taxes paid in 1920. Of this sum petitioner should be allowed $60 on account of personal property

taxes paid and $184.66 tax paid on theater and opera tickets. It does not appear whether the railroad travel was for personal or business account or if the latter, that he was not reimbursed. The larger part of the deduction claimed was for excise taxes alleged to have been paid by petitioner. In substantiation, in addition to petitioner's testimony, there was submitted a receipted bill for a payment of $30,700 for a pearl necklace given by petitioner to his wife in 1918 and paid for in 1920. The bill gives no indication of the payment of any tax, but, were such proven, the deduction would not be allowable. See *George M. Cohan*, 11 B. T. A. 743. This ruling also applies to remaining deductions claimed under this item, such as taxes on fur coats and silverware. Moreover, petitioner's proof of payment was wholly insufficient to enable us to determine with any certainty what amounts were paid. It consisted entirely of approximations and estimates. See *P. S. Thorsen*, 15 B. T. A. 1281.

The next item requires comment. Petitioner claimed a loss of $6,500 as due to "fire, storms, shipwreck or other casualty." In his affidavit of July 24, 1926, Gano alleges this item to represent a loss "made through speculation." At the hearing it developed that the item was to cover a gambling loss.

Sometime in 1920 Gano visited a gambling house in Philadelphia. A few days later he was confronted with an I. O. U. for $13,000. Gano professed to have no recollection of signing the same but, recognizing his signature and under threat of a suit thereon and being advised (so he claimed) recovery could be had, paid $6,500 in compromise. In justification Gano naively contended that he visited the gambling house to establish business contacts and that, therefore, the gambling debt was a legitimate business expense. Passing the humor of that suggestion, the attempt to camouflage this personal gambling loss as a legal deduction by calling it a loss due to fire, storm or shipwreck was nothing short of attempted willful deception. Merely to state the true character of the deduction is to demonstrate that it is not allowable. *M. M. Frey*, 1 B. T. A. 338.

In his return for 1920 petitioner claimed as a bad debt deduction $2,500 advanced to Kentucky Products Co. At the hearing petitioner testified that this advance was covered by three notes "and when I found out the stock was worthless I knew, of course, that the notes were worthless." Petitioner was unable to present the notes in evidence. In the affidavit of July 24, 1926, petitioner stated that the stock was worthless in 1919. Petitioner's recollection of the facts surrounding the transaction was vague and uncertain. The testimony fails to establish that the deduction was allowable.

Similar uncertainty is found in the next item—$15,000 invested in Liberty Auto Transit Co. The investment was not established to

be a debt. From some of the evidence it would appear to be a contribution to a partnership consisting of petitioner and others. Nor does it appear when the partnership, if such it was, suffered the loss. There is evidence that the concern went out of business in 1918. Petitioner has not satisfactorily related the item to the taxable year.

The loan in 1919 of $1,500 to W. E. Detlor and the worthlessness of the same in 1920 are established and allowable as a deduction.

Petitioner claimed $7,540.19 as a loss from an investment in an oil-drilling venture with one Priestly. At the hearing the amount of the alleged investment was reduced to $5,281.94 by the admission of petitioner that included in the sum claimed was an item of $2,258.25 which petitioner had never paid. In the findings of fact we have fixed the amount of $4,893.08 as proven. This amount should be allowed as a loss in 1920.

The Gano Moore Co. voted petitioner a salary for 1921 of $50,000, plus 20 per cent of the net profits. A bonus amounting to $19,131.42 was earned and credited to petitioner on the company's books December 31, 1921. Petitioner failed to report the item as income and offers in excuse only the fact that the entry was probably not made until after the close of the year. He admitted at the hearing that the additional sum was received " as income of 1921." It further appears that a similar bonus was reported as income for 1920. Respondent's action in adding the sum to income for the year 1921 is correct.

The sum of $30,841.06 paid by Gano Moore Co. in 1921 for account of taxpayer to satisfy additional taxes due to the Government was admitted to have been properly added to income.

Petitioner deducted from his 1921 return the sum of $9,900 for entertainment of customers. No itemization of the deduction was attempted nor was any corroborative evidence submitted. We have on many occasions refused to put the stamp of approval on such items as this. In *P. S. Thorsen & Co.*, *supra*, we said:

The record is replete with admissions of inability to indicate the amount of any specific expenditure. Though petitioner purports to approximate certain amounts, the approximations are shown to be so uncertain as to amount to nothing but an estimate or a guess. A recollection so deficient as to the expenditure of such large sums of money can scarcely be trusted to make reasonably accurate approximations.

\* \* \* \* \* \* \*

Thus, in sum, we are asked to allow these large deductions as ordinary and necessary expenses solely on the statement that they were made in the company's business. It is so obvious as not to require demonstration or citation of instances that the test proposed is far too broad. Not every expenditure in " the business of the company " is an allowable deduction. Certain expenditures are expressly excluded by law. Others depend on the reasonableness of the amount expended. Many expenditures, proper in one situation, might be improper in the presence of other facts.

Though petitioner testified that he was not reimbursed for this sum, the books of the Gano Moore Co. show that that company reimbursed him in an amount in excess of $15,000 for expenditures made by him during 1921.

No attempt was made to substantiate the deduction of $250 for a bad debt. It is disallowed.

During 1921 Gano Moore Coal Mining Co. paid petitioner $2,-456.45 and charged the same as reimbursement of money claimed by him to have been spent in the interest of Gano Moore Coal Mining Co. Respondent added the same to income. This item differs from items previously discussed only in that it is a matter of addition to reported income rather than a deduction therefrom. The underlying principles are the same and when the item is put in controversy it is incumbent on petitioner to show not only that the company entered it on its books as reimbursement of expenses, but that the expenses were actual and proper. To hold otherwise would be to accept a book entry as final and conclusive. Petitioner, on whom rested this burden, contented himself with the statement that the money was spent in the interest of the company. We have already indicated that such a statement does not attain to the standing of satisfactory proof.

During 1922 the Gano Moore Co. authorized the payment of $20,000 as salary to petitioner. The salary account shows $15,002 paid. There was also credited to petitioner's account and charged to profit and loss the sum of $1,666.67. The latter amount apparently was additional compensation though not charged through the salary account. Petitioner did not prove it to be otherwise and the respondent is sustained.

By his own testimony petitioner proved the item of $6,400 claimed in his 1922 return as a deduction for entertaining customers to be unallowable. He admitted that he was reimbursed for same by the Gano Moore Coal Mining Co.

The next item, involving the determination of the proper year for reporting of a bonus payment of $19,131.46 authorized by the Gano Moore Co. and credited by petitioner in 1921, has been disposed of above. It was income for 1921.

During 1922 petitioner had loans from various insurance companies claimed to aggregate the sum of $71,004.52. In his tax return petitioner claimed as a deduction for interest paid the sum of $4,260. Though the item was substantial in amount and readily susceptible of indisputable proof, petitioner rested his case on a statement that he paid interest at the rate of 5, 5½, and 6 per cent. He did not produce the canceled checks or other evidence of payment or any corroborative testimony. The evidence establishes neither the fact nor the amount of the payment.

Respondent concedes the deductibility of the sum of $121.80 personal property taxes paid in 1922. The remainder of the deduction of $762.90 was not proven.

During 1922 petitioner and his brother paid a large sum of money in to the Gano Moore Coal Mining Co. to prevent it from going into receivership. Petitioner claimed a bad debt deduction of $22,822.50 on account of this transaction. Petitioner was a stockholder in the Gano Moore Coal Mining Co. He testified that the money was " paid into the company " to pay its debts and that thereafter the indebtedness was canceled. Clearly, were there no other infirmity in the proof, on petitioner's own statement that the indebtedness was canceled the deduction was not allowable. *J. M. Byrne*, 1 B. T. A. 996. Furthermore, we are unable to determine the true character of the transaction, whether the payment was in the nature of a contribution to capital or, in view of petitioner's further testimony respecting his purchase of the preferred stock from stockholders in Gano Moore Coal Mining Co., to save them from loss, a purchase of stock. Attention is directed to the fact that although petitioner testified that at the close of 1922 Gano Moore Coal Mining Co. " did not have anything " the tax return of the company for 1922 showed gross sales were $4,288,000.81. Petitioner has failed to prove the determination of the respondent to be incorrect.

In his 1923 return petitioner deducted $1,820 as expenses of the Gano Moore Coal Mining Co. paid by him. Asked if he was reimbursed he replied, " No, not by direct payments of the company." This statement is open to but one inference, namely, that he was otherwise reimbursed. Petitioner submitted no proof of the correctness of the amount or of the character of the alleged expenditures. We have already indicated herein the view of the Board as to evidence of this nature.

Respondent concedes the correctness of the deduction of $50.67 claimed on account of taxes paid. The loans to two personal friends aggregating $135 became worthless and were properly charged off in 1923. The alleged loss of $675 on oil stock was not proven and the respondent is sustained.

There remains for consideration the issue of fraud. Respondent determined that petitioner's tax returns for 1920 and 1921 were fraudulent and assessed a penalty of 50 per cent for each year. At the hearing counsel for the Government moved to increase the deficiencies found for 1922 and 1923 by a finding that the tax returns for those years were false and fraudulent.

To establish fraud by direct proof of intention is seldom possible. Usually it must be gleaned from the several transactions in question and the conduct of the taxpayer relative thereto. Moreover, in assaying evidence to determine the presence or absence of fraud, the

scales of justice must dip more heavily than in the ordinary civil case—a mere preponderance is not enough, the evidence of fraud must be clear and convincing.

After a painstaking study of the evidence in this case, giving petitioner the benefit of doubt where doubt existed and bearing in mind the above stated rule, we are of the opinion that the understatement of petitioner's taxable income for the years 1920 and 1921 was fraudulent, with intent to evade the tax due.

Isolated instances of discrepancy or occasional lapses from the rigid accountability contemplated by the law might conceivably be overlooked, but where the whole fabric of petitioner's tax accounting is permeated with gross error, where elaborate artifice is employed to accomplish the end sought, where the evidence adduced in explanation on different occasions varies so as to make it all unreliable, where sworn statements are proven by records to be false, and where the errors both of law and of fact all tend to accomplish a reduction of apparent tax liability, the situation goes beyond mere fortuitous coincidence, or unintentional error. It evidences a purpose to evade. Without pausing to repeat the evidence that brings us to the conclusion that we have announced, be it said that all of the above conditions are present in this case.

The singular parallelism that characterized the action of the petitioner and his brother in respect to the issuance of stock to their wives, the transfers to the husbands, the treatment of dividends, and the exact coincidence of payments and withdrawals from various funds, to no explained purpose, can not be overlooked. Though fraud is not proven merely by establishing that petitioner claimed unallowable deductions or that he lacked understanding or good judgment in the same, where a taxpayer has attempted to obtain unallowable deductions by falsely representing the character of the same, the good faith of the taxpayer is impugned and it is but reasonable to look to the recurring presence of such improper deductions as corroborative of the intent of the taxpayer to evade taxes.

A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose.

Petitioner pleads that he was a busy man and delegated all details to others. This fact does not excuse him, nor palliate his conduct in swearing to the truth of divergent statements of fact. An oath is not to be taken lightly and a party has no basis for complaint if he be held to strict account for the truth of sworn documents or testimony. It is but a short step from carelessness, indifference to accuracy, and slipshod practice such as characterized the dealings of

taxpayer with the Government to the fraudulent evasion of taxes. That petitioner took that step we believe fully appears in the record in this case. The addition of fraud penalties for 1920 and 1921 is approved. The evidence does not sustain the charge of fraud for 1922 and 1923.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MARQUETTE did not participate in the consideration or decision of this proceeding.