Rodney L. Coleman v. Commissioner.
Coleman v. Commissioner
Docket No. 23932.
United States Tax Court
1950 Tax Ct. Memo LEXIS 69; 9 T.C.M. (CCH) 938; T.C.M. (RIA) 50253; October 20, 1950
*69 Thomas D. Cooper, Esq., P.O. Box 549, Burlington, N.C., for the petitioner. George J. LeBlanc, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax and fraud penalties thereon for 1942 and 1943 as follows: Income
Fraud
Year
Tax
Penalty
Total
1942
$ 3,315.48
$ 1,657.74
$ 4,973.22
1943
31,155.22
23,188.58
54,343.80
The petitioner does not contest the correctness of the adjustments made by the respondent to his income for 1942 and 1943, with the exception of respondent's disallowance of a claimed business deduction for 1943 in the amount of $29,440.50, which deduction respondent now concedes should have been allowed. That concession in petitioner's favor will be given effect under Rule 50. The only issue presented for decision is whether respondent erred in his determination that some part of the deficiency in tax for each of the years 1942 and 1943 is due to fraud with intent to evade tax and in his imposition of the 50 per cent fraud penalties on the total deficiency for each of these years. Because of his proposed assessment of the fraud penalty with *70 respect to the year 1942, the respondent has denied to the petitioner the benefit of the forgiveness feature of section 6 of the Current Tax Payment Act of 1943. Our decision as to whether the petitioner's return for 1942 was fraudulent will thus have a controlling effect upon the basic tax liability of the petitioner for 1942 and 1943. Findings of Fact The petitioner is an individual residing in Burlington, North Carolina. His federal tax returns for 1942 and 1943 were filed with the collector of internal revenue for the district of North Carolina. From 1929 to 1938 the petitioner was a minority stockholder of Peerless Hosiery Mills of Burlington, North Carolina, and was also secretary and treasurer of the corporation. In his official capacity petitioner signed the income tax returns of the corporation, but the returns were prepared by the president of the corporation, who was more familiar with return requirements than was the petitioner, whose principal duty was the supervision of knitting in the mills. In 1938 petitioner terminated his association with Peerless Hosietry Mills and became a salesman on a commission basis for Dexdale Hosiery Mills, a manufacturer of hosiery, *71 located in Lansdale, Pennsylvania. In 1942 petitioner made some sales for the Dexdale Hosiery Mills but learned in that year that thereafter there would be very little merchandise for him to sell. In the spring of 1942 petitioner began to buy and sell hosiery as a jobber for his own account, conducting his business under the trade name "R. L. Coleman." In October 1942 petitioner entered into a joint venture with John M. Shoffner, who was then president and principal stockholder of Standard Hosiery Mills, Inc., of Alamance County, North Carolina, whereby Standard Hosiery Mills sold petitioner certain merchandise for resale by him as a jobber under his own account. Shoffner and petitioner agreed orally that Shoffner should receive 50 per cent of all the gross profits from petitioner's operations, which were all conducted under the petitioner's name. The petitioner understood that Shoffner would handle all accounting for the venture and would attend to filing tax returns. It was also understood that since Standard Hosiery Mills operated on a fiscal year basis for a year ending October 31 the accounting for the joint venture would be handled on approximately the same basis. Petitioner *72 maintained no records reflecting the transactions in which Shoffner was interested other than his purchase and sales invoices. He maintained no separate bank accounts for the transactions and did not deposit checks received in connection with them. Some checks were endorsed and delivered to creditors and others were cashed and the proceeds used to pay creditors or to pay expenses. All payments of profits to Shoffner were made in cash. On about January 1, 1943, petitioner became the active and managing member of a partnership engaged in the hosiery jobbing business under the name Sherwood Hosiery Company. Complete acounting records were maintained for this business by another partner. Its business was not conducted in cash, as were other business operations of the petitioner, but a bank account was maintained and disbursements were made by check. In the latter part of 1943 petitioner and R. J. Nestler engaged in a joint venture to sell a certain lot of merchandise. The venture terminated when the merchandise was sold and the proceeds were realized in cash after a relatively short period of operation. The transactions in which Nestler had an interest were all conducted in petitioner's *73 name. Petitioner maintained no separate bank accounts for the transactions and did not deposit all checks received in connection with them. All checks, cash, and invoices which petitioner handled in connection with this venture were handled in a similar manner to the way in which he handled his venture with Shoffner. No additional records were maintained by petitioner. At the end of 1942 petitioner knew that sales made during the year for his own account and for his account with Shoffner had been made at apparent gross profits, but at that time the petitioner was indebted to Standard Hosiery Mills in a substantial amount for merchandise which he had sold but for which he had not been paid. The petitioner was not sure at that time whether he would ever realize any ultimate net profit from his jobbing ventures during 1942 either on his own account or with Shoffner. On March 10, 1943, petitioner prepared and filed his income tax return for 1942, reporting as income only the commissions received by him from Dexdale Hosiery Mills during that year. No disclosure was made on the return of income, sales, purchases, or expenses in connection with either the jobbing transactions conducted *74 during 1942 for his own account or with Shoffner. Petitioner knew that some disclosure of his jobbing transactions should have been made on his 1942 return but did not know at the time he filed his return whether he had realized income which should have been reported in that return. In October 1943 Shoffner required petitioner to borrow sufficient funds to pay off his account with Standard Hosiery Mills prior to the close of the mill's fiscal year on October 31. Petitioner and Shoffner at that time discussed the filing of a tax return for the year and Shoffner agreed to have the necessary accounting done and the return filed after his return from a trip to Florida. Shoffner then went to Florida, where he died suddenly on March 3, 1944, thereby terminating the joint venture with petitioner. After Shoffner's death, but before March 15, 1944, petitioner realized that he must attend to the accounting and filing of tax returns. He employed a certified public accountant in Burlington to prepare his income tax return for 1943 from information which he then provided. At the same time, petitioner requested that the accountant do additional accounting work for him by installing adequate *75 accounting records, by performing the accounting services necessary to determine his past and future income from hosiery jobbing transactions, and by amending his tax returns as necessary. Due to the pressure of other work, the accountant was unable to prepare and file petitioner's return for 1943 before March 15, 1944, so petitioner applied for and received an extension of time to April 15, 1944, for filing the return. The return was then prepared by the accountant from information furnished by petitioner and filed on April 5, 1944. The only income reported on the return consisted of commissions received from Dexdale Hosiery Mills and petitioner's distributable share of profits earned by Sherwood Hosiery Company. No disclosure was made on the return of income, sales, purchases, or expenses in connection with jobbing transactions conducted during 1943, either for his own account or for his accounts with Shoffner and Nestler, although figures furnished by petitioner to the accountant for estimating 1944 income did disclose that petitioner was engaged at that time in the business of jobbing hosiery. The taxable income which petitioner realized during 1942 and 1943 and the amounts *76 which he reported or omitted on his original tax returns for those years are as follows: 1942 Income
1943 Income
Source of
Income
Realized
Reported
Omitted
Realized
Reported
Omitted
Dexdale
Hosiery Mills
$ 1,930.26
$1,930.26
$ 2,411.73
$ 2,411.73
Sherwood
Hosiery
Company
13,319.95
13,319.95
Jobbing
transactions: Own account
10,223.51
$10,223.51
6,661.78
$ 6,661.78
Coleman-
Shoffner
2,327.53
2,327.53
27,899.10
27,899.10
Coleman-
Nestler
1,306.41
1,306.41
$14,481.30
$1,930.26
$12,551.04
$51,598.97
$15,731.68
$35,867.29
On September 11, 1944, after certain preliminary investigation, an internal revenue agent called upon petitioner for the purpose of investigating his tax returns for 1942 and 1943, together with the partnership return of Sherwood Hosiery Company for 1943, and asked for any records which the petitioner might have which would assist the agent The petitioner requested and was granted a delay in the investigation until his accountant could complete his records for 1942 and 1943. On September 18, 1944, the certified public accountant whom petitioner had employed *77 to audit his figures and to install and maintain an accounting system for him directed an accountant from his office to perform those services. The accounting was then completed and amended income tax returns for 1942 and 1943 were filed on December 15, 1944. On the same date partnership information returns were filed reflecting the transactions of petitioner and Shoffner for the periods October 1, 1942, to September 30, 1943, and October 1, 1943, to May 31, 1944. Respondent's agent was then notified that the accounting was complete and that amended returns had been filed for the petitioner for 1942 and 1943. Respondent's agents commenced an actual investigation of petitioner's tax liability for 1942 and 1943 in January 1946. After verifying the accuracy of the records prepared by the petitioner's accountant, the agents used those records in making the investigation. As the result of the examination, respondent determined that taxable income realized by petitioner during the calendar years 1942 and 1943 was intentionally omitted from the original returns filed by him for those years for the fraudulent purpose of evading the taxes due thereon. In addition to determining the deficiencies *78 in tax here involved, respondent also asserted the 50 per cent fraud penalty by reason of his determination and denied to petitioner the benefit of the forgiveness feature of section 6 of the Current Tax Payment Act of 1943. Although petitioner knew that his original returns for 1942 and 1943 were incomplete, he assumed that his operations as a hosiery jobber could and would be properly reported on a fiscal year basis. He voluntarily contacted competent accountants to complete and correct his records before any investigation of his tax liability was commenced by respondent's agents and filed amended returns for 1942 and 1943, which, if allowed on a fiscal year basis, would have corresponded with the respondent's determination of his taxable income for those years. No part of the deficiencies assessed against petitioner for 1942 and 1943 was due to fraud with intent to evade the tax. Opinion LEMIRE, Judge: The sole issue presented for our determination is whether the petitioner's failure to report a substantial part of the taxable income realized by him during 1942 and 1943 on the original tax returns filed by him for those years was due to fraud with intent to evade the payment *79 of tax due. The petitioner contends that respondent erred in his determination that petitioner filed fraudulent returns for 1942 and 1943 with intent to evade tax. He argues, and we agree, that the fraud meant in section 293 (b), Internal Revenue Code, under which respondent has asserted the 50 per cent fraud penalty, is actual, intentional wrongdoing and that the intent required is the specific purpose to evade a tax believed to be owing. See Mitchell v. Commissioner, 118 Fed. (2d) 308, on remand, 45 B.T.A. 822. The mere omission from reported income of items which should have been included does not prove the taxpayer had a fraudulent intent when there is evidence that the omission was due to negligence, no matter how great, or to some mistaken conception of taxpayer's rights. The respondent must meet the burden of proving fraudulent intent to evade tax by omitting income with clear and convincing proof. M. Rea Gano, 19 B.T.A. 518. We have been unable to find in the evidence anything which supports an allegation of an actual existing purpose or intent of the petitioner to evade the payment of tax for 1942 and 1943. *80 To the contrary, there are several indications in the evidence that petitioner acted in good faith, although he has clearly failed to use proper diligence in dealing with the Government. See Charles E. Mitchell, 32 B.T.A. 1093, affd., 303 U.S. 391. Petitioner's records were inadequate, and he relied to a great extent on others to discharge his responsibility to keep proper records and to assemble the necessary data for filing returns; but he made an effort to have the records corrected and proper returns filed for him, when he realized that he could not depend entirely upon others to perform those services for him, long before he learned that his tax liability was being investigated. He apparently co-operated with respondent's agents in the conduct of their investigation, and his amended returns, if they had been acceptable on a fiscal year basis, would have been substantially in accord with the figures determined by respondent's agents. We conclude that respondent has failed to sustain his burden of proving by clear and convincing evidence that petitioner's original returns for 1942 and 1943 were prepared and filed with a fraudulent intent to evade tax. *81 It follows that respondent's assertion of the 50 per cent penalty for fraud and his denial to petitioner of the benefits of section 6 of the Current Tax Payment Act of 1943 were in error. Decision will be entered under Rule 50.