Peter Goralski v. Commissioner.
Goralski v. Commissioner
Docket No. 29096.
United States Tax Court
1952 Tax Ct. Memo LEXIS 199; 11 T.C.M. (CCH) 542; T.C.M. (RIA) 52166; May 29, 1952
*199 Respondent determined deficiencies and fraud penalties for the taxable years 1946 and 1947. Petitioner admitted that he had understated his income for the year 1947 but disagreed as to the amount of understatement for that year. He also maintained there was no understatement for 1946 and that fraud penalties were inapplicable for either year. Held, petitioner has failed to prove that respondent's determination for each of the years as to the amount of understatement of income was erroneous. Held, further, respondent did not err in determining that the 50 per cent fraud penalty was applicable for each of such years. Anthony L. Lutomski, Esq., 1025 Penobscot Bldg., Detroit, Mich., for the petitioner. John L. King, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This case was consolidated with the case of Mathew Goralski, Docket No. 29098, for the purpose of hearing only. Separate briefs were submitted, and it was agreed that the Court would render separate opinions in the cases. The respondent determined deficiencies in income tax and penalties for the years 1946 and 1947 as follows: Years
Deficiencies
Penalties
1946
$1,658.57
$829.28
1947
1,145.97
572.98
*200 At the hearing, respondent was granted permission to file an amendment to his answer increasing the deficiency and penalty for the year 1947 by the amounts of $576.41 and $288.21, respectively. The issues to be decided are: (1) whether the petitioner understated his income for the taxable year 1946 and, if so, by what amount; (2) the amount by which petitioner understated his income in his Federal income tax return for the year 1947; and (3) whether such understatements, if any, were made falsely or fraudulently with intent to evade tax. Some of the facts were stitpulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner is married and resides in Hamtramck, Michigan. His individual income tax returns for the years in question were filed with the collector of internal revenue at Detroit, Michigan. Petitioner was born in Poland in 1884, came to the United States in 1912, and was naturalized in 1942. His education consisted of two years' schooling in Poland. Petitioner worked for the Swedish Crucible Steel Company (hereinafter referred to as the Company) as a molder from 1912 to 1938 when, in connection with such work, he suffered *201 an injury to his spine. The Company was self-insuring and paid its own compensation insurance. Petitioner's claim against the Company was settled by an agreement to pay him $18 per week for a period of 500 weeks. The Company paid petitioner for the full 500 weeks, but there were some weeks when petitioner did not receive the total amount of compensation because he apparently received compensation from other means. Every time petitioner received compensation, he signed a receipt. A tabulation of these receipts shows the petitioner received the following compensation: January 18 to December 31, 1938
$ 822.00
1939
864.00
1940
702.00
1941
843.78
1942
1,188.00
1943
936.00
1944
900.00
1945
972.00
1946
936.00
January 1 to August 18, 1947
648.00
Total
$8.811.78
Petitioner was on the welfare rolls of Hamtramck during 1939 and 1940. At the beginning of World War II, petitioner was employed for a short time as a watchman at 65" per hour. From 1941 through 1944, petitioner was employed as a bartender at a salary of $25 per week. From July, 1944, until petitioner bought his own tavern in 1945, he worked in his son's tavern for $60 per week. During this time, *202 petitioner was receiving compensation from the Company. The Company's records shows that the largest sum he received for any one year was during 1942. Petitioner loaned his son, Mathew, $6,000 in 1944 which Mathew used in the purchase of a tavern. The loan was repaid in 1945. In November, 1945, petitioner purchased a tavern for $31,250. He paid $15,000 cash, $9,000 of which was borrowed as follows: $5,000 from Mathew, $1,500 from Peter Goralski, Jr., $1,500 from Eugene Goralski, and $1,000 from John Zmijewski. A land contract in the amount of $16,250 was held by the former owner for the balance of the purchase price. Petitioner kept only one book in which he recorded his business transactions in the tavern, using a single-entry method of bookkeeping. Petitioner had no knowledge of accounting. He had a bookkeeper who prepared his income tax returns. Petitioner's cash register was an old model which contained no tape but merely recorded the total sales. Petitioner sometimes made daily entries of such sales in his record book, and at other times several days would be omitted. At still other times, an entry was made that included two or three days' receipts. Internal revenue agents *203 began an examination of petitioner's income tax returns during 1948. Finding the books did not reflect petitioner's true income, it was determined that the net-worth method of analysis be used in computing petitioner's net income. Petitioner was cooperative during the investigation. The parties have stipulated that the following net-worth analysis is true except for the items marked "Disputed." ASSETS
12/31/44
12/31/45
12/31/46
12/31/47
Cash on Hand
Disputed
Disputed
$ 1,800.00
Disputed
Safe Deposit Boxes: Liberty State Bank
Disputed
2,000.00
Peoples State Bank (J)
$ 1,620.00
U.S. War Bonds - Cost
$ 825.00
0
0
0
Notes Receivable
Mathew Goralski (Son)
6,000.00
0
0
0
Merchandise Inventory
$ 2,200.00
4,000.00
8,345.10
Real Estate
13,000.00
13,000.00
13,000.00
Good Will
12,800.00
12,800.00
12,800.00
Land
2,250.00
2,250.00
2,250.00
Furniture and Fixtures
1,000.00
1,000.00
1,000.00
Insurance Premium (Cum.)
0
0
11.00
Total Assets
36,850.00
Reserve for Depreciation
24.59
319.59
614.59
Total Adjusted Assets
36,530.41
LIABILITIES
Mortgage - Cazimer Kozabowski
15,920.00
14,928.25
13,875.31
Notes Payable: Mathew Goralski (Son)
5,000.00
3,000.00
1,000.00
Peter Goralski, Jr. (Son)
1,500.00
750.00
0
John Zmijewski
500.00
500.00
500.00
Eugene Jezierski (Goralski)
1,400.00
1,250.00
1,000.00
Total Liabilities
24,320.00
20,428.25
16,375.31
Net Assets
16,102.16
Assets of Prior Year
16,102.16
PERSONAL EXPENDITURES
Living Expenses
1,500.00
1,500.00
2,000.00
Recreation
150.00
150.00
150.00
Medical Expense
1,632.72
907.00
673.00
Income Taxes Paid
514.93
325.95
327.30
Total Personal Expenses
3,797.65
2,882.95
3,150.30
Nontaxable Pension
836.00
836.00
836.00
Income Reported by Wife
1,960.00
2,040.00
2,080.00
Income Reported by Husband
649.77
2,108.22
1,677.42
*204 Petitioner reported net income from his tavern during 1946 and 1947 in the amounts of $2,108.22 and $1,677.42, respectively. In his deficiency notice, respondent determined that petitioner had understated his income for 1946 and 1947 in the amounts of $7,085.48 and $5,490.92, respectively. In his petition, petitioner admitted that his income had been understated for the year 1947 in the amount of $2,870.92. The disputed items in the stipulation of petitioner's net worth center around the amount of cash which petitioner had either listed as cash on hand or "safe deposit boxes." The positions taken by petitioner and by respondent in regard to these disputed items are as follows: Petitioner
Respondent
In His
At
Deficiency
Amended
Years
Petition
Hearing
Notice
Answer
12/31/44
Cash on Hand
$7,000
$7,000
0
0
12/31/45
Cash on Hand
4,000
No testimony
0
0
Safe Deposit Boxes
3,000
No testimony
0
0
12/31/47
Cash on Hand
500
Undeterminable
$1,000
$3,000
During the investigation, petitioner informed the revenue agents that he had no cash on hand at the end of 1944. The agents checked bank accounts, financial institutions, *205 information from tax returns, and information from city and county records, as to real estate purchased, in conducting the examination. All the banks in and around Detroit and its suburbs were circularized as to bank accounts of petitioner for the period under consideration. Petitioner has failed to show that respondent's determination in his deficiency notice of cash on hand as of December 31, 1944, 1945, and 1947, and cash in the safe deposit box as of December 31, 1945, were incorrect. Respondent has failed to prove cash on hand as of December 31, 1947, was more than the $1,000 determined in the deficiency notice. The parties stipulated that the cash in the safe deposit boxes on December 31, 1947, was $1,620. In filing his income tax returns for the taxable years, petitioner materially understated his net income for each of the taxable years. Petitioner knew or should have known that his net income was materially understated for each year. Petitioner filed false and fraudulent returns for each of the taxable years with the intent to evade tax. Opinion RICE, Judge: In his petition, petitioner admitted that income had been understated by him for the year 1947, and the issues *206 to be decided are whether petitioner understated his income for 1946, the amount by which he understated his income for 1947, and whether such understatements, if any, were made falsely or fraudulently with intent to evade tax. In a case involving fraud, the petitioner has the burden of proving that he is not liable for the deficiency, and the respondent has the burden of proving fraud and of proving the additional amount of the deficiency affirmatively alleged by the amended answer for the year 1947. Joseph V. Moriarty, 18 T.C. 327 (promulgated May 19, 1952). A net-worth method of analysis was used by respondent to determine petitioner's income for the years here in question. No issue was raised as to the propriety of using such method. Most of the items making up petitioner's net worth have been stipulated by the parties, and the only disputed items are cash on hand at the close of 1944, 1945, and 1947, and the amount petitioner had in a safe deposit box at the close of 1945. The years before us are 1946 and 1947; and, in order to determine petitioner's income by use of the net-worth method of analysis, it is necessary for us to know petitioner's net worth at the *207 close of 1945. In his brief petitioner agreed to respondent's determination of no cash on hand at the end of 1945. The other disputed item for 1945 was the amount petitioner had in his safe deposit box at the close of 1945. In his petition, petitioner maintained he had $3,000 in the box. He offered no testimony at the hearing as to such amount, and has, therefore, failed to prove that respondent's determination that he had no cash in the safe deposit box at the close of 1945 was erroneous. The only other disputed item is the amount of cash on hand petitioner had at the close of 1947. In his petition, petitioner maintained he had $500 cash on hand. In the deficiency notice, respondent determined that petitioner had $1,000 cash on hand at that time. By his amended answer, respondent affirmatively alleged that petitioner had $3,000 cash on hand at the close of 1945, and increased the deficiency and penalty for such year. We feel that respondent has failed to prove such increase in deficiency and penalty. The basis of respondent's amendment was petitioner's testimony during cross-examination at the hearing in this case, which was as follows: "Q. In 1947 then, in December, you have *208 stated that your share in the safety deposit box was $1620; is that correct? "A. Yes, sir. "Q. How much did you keep in cash in order to cash the checks for the bar? "A. I forget. "Q. $2000, $3000? "A. I keep everything home extra for change. * * *
"Q. How much cash then do you think you had on hand in December, 1947? "A. I don't know. "Q. $2000? $3000? "A. $2000 or $3000, something like that, sir." At the trial, petitioner indicated a lack of fluency with the English language. We feel from the record in this case that petitioner did not completely understand the questions which respondent's counsel was asking him in cross-examination. If the $1,620 in the safe deposit box at the close of 1947 is added to the $1,000 determined by respondent in his deficiency notice to be the amount petitioner had in cash on hand for that year, we have a total of $2,620 which is probably the $2,000 to $3,000 petitioner testified he had at that time. We, therefore, sustain respondent's initial determination of $1,000 as the amount of cash on hand at the close of 1947. Testimony was offered at the hearing to prove petitioner had $7,000 cash on hand at the close of 1944. While *209 we feel petitioner has failed to prove that he did have such amount on hand at that time, it is unnecessary for us to go into the question since it is irrelevant in this case, the proof having shown petitioner had no cash on hand or in his safe deposit box at the close of 1945. The other issue is the fraud issue. The amounts of income reported by petitioner, the amounts determined under the net-worth method, and the understatements for the taxpayer here in question were as follows: Determined under
the Net-
Under-
Year
Reported
Worth Method
statement
1946
$2,108.22
$9,193.70
$7,085.48
1947
1,677.42
7,168.34
5,490.92 It is seldom possible to establish fraud by direct evidence, and it must be determined from all the facts and circumstances making up the record. M. Rea Gano, 19 B.T.A. 518 (1930). Where large amounts of income are not reported, failure to do so, if not actually constituting fraud, is at least substantial evidence of fraud. Rogers v. Commissioner, 111 Fed. (2d) 987 (C.A. 6, 1940); Arlette Coat Co., Inc., et al., 14 T.C. 751 (1950). In this case, petitioner's understatement for each of *210 the years in question was well over 100 per cent. The parties have stipulated personal expenses for the years 1946 and 1947 were $2,882.95 and $3,150.30, respectively. In addition, he was paying off large amounts of his indebtedness to various persons which he had borrowed about the time he purchased his bar. It does not seem reasonable that petitioner was unaware of the over-all improvement in his financial picture or that the amounts of net income he was reporting were too small to accomplish such improvements. We must conclude that petitioner was aware of such facts, and that in filing his income tax returns he intended to evade tax. Under all the facts and circumstances making up the record, we hold that petitioner falsely and fraudulently understated his income for each of the taxable years here in question with intent to evade tax, and that respondent did not err in determining that a 50 per cent fraud penalty was applicable for each of the years here in question. Decision will be entered for respondent in the amounts of the deficiencies and penalties originally determined in the deficiency notice.