J. O. Waldron v. Commissioner.
Waldron v. Commissioner
Docket No. 22726.
United States Tax Court
1952 Tax Ct. Memo LEXIS 57; 11 T.C.M. (CCH) 1049; T.C.M. (RIA) 52309; October 27, 1952
*57 R. G. Harless, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioner's income tax liability and assessed fraud penalties thereon as follows: 50%
Fraud
Year
Tax
Deficiency
Penalty
1943
Income and Victory
$1,087.31
$ 543.66
1944
Income
5,857.26
2,928.63
No appearance having been entered at the hearing on petitioner's behalf, respondent's motion to dismiss the petition in so far as the deficiency assessments are concerned is hereby granted. Evidence was received at the hearing in order to permit respondent to sustain his burden of showing whether any part of these deficiencies is due to fraud with intent to evade tax within the meaning of section 293 (b) of the Internal Revenue Code. Findings of Fact Petitioner is an individual who resided in Ogden, Utah, during the years in controversy. He filed his Federal income tax returns for those years with the collector of internal revenue for the district of Utah. In his 1943 return, petitioner reported total income of $1,900, consisting of income from a partnership of *58 $1,400 and net long term capital gain of $500 from the sale of his interest therein for $1,000. Deductions of $70 were claimed, resulting in a reported taxable net income of $1,830. In his 1944 return petitioner reported a total income of $4613.03 which was shown as income from a partnership known as "Mecca." Deductions totaled $711 resulting in a reported net taxable income of $3,902.03. Petitioner had a wife and two children as dependents in 1943, and a third child who was a dependent for six months of that year. He had a wife and three children as dependents for the year 1944. During the first four months of 1943, petitioner was a partner with one Zell Wright in the operation of the Labor Temple Club in Ogden, Utah. He sold his interest therein to his partner in April, 1943. Between August 12, 1943 and October of that year petitioner deposited $13,600 in a personal account in an Ogden bank. On or about January 31, 1944, petitioner and one Raymond Salmon became partners in the operation of two taverns known as the "Mecca" and the "Calico Cat" which they continued to operate as partners until the close of the year. Petitioner borrowed $4,000 from one Mose Miller and $6,000 from *59 a Salt Lake City bank which was used, together with money of his own, to pay for his interest in the businesses. These loans were repaid by the end of 1944. During the years 1943 and 1944, petitioner also engaged in gambling activities. Petitioner kept no books of account or records of his income for the calendar year 1943. A set of books was kept for 1944 relating to the partnership operations of the "Mecca" and the "Calico Cat," but these books were incomplete. There was no accounting for cash, the receipts according to the books were always much lower than the business bank deposits, a large number of checks drawn on the business bank account were not accounted for on the books, and many of the receipts and expenditures of the partnership were in cash and never appeared in the books or the bank account. Petitioner did not maintain personal books or accounts from which his income could be determined. It was necessary for respondent to adopt the net worth method for computing petitioner's income for the years 1943 and 1944. At the close of the calendar years 1942, 1943 and 1944, petitioner had assets, liabilities and net worth in the following amounts: 1942
1943
1944
Balance in checking a/c: First Security Bank, Ogden
$1,719.51
$ 803.29
$ 210.52
Commercial Security Bank, Ogden
792.28
War bonds - at cost
918.75
1,875.00
1,950.00
Home
5,000.00
5,000.00
1941 Oldsmobile automobile
1,200.00
1,200.00
1,200.00
Packard automobile
325.00
Equity in Labor Temple Club
1,500.00
Half interest in Mecca Club
10,304.36
Half interest in Calico Cat
7,396.12
TOTAL ASSETS
$5,338.26
$8,878.29
$27,178.28
Liabilities: Loan due to J. Shurtliff
none
none
2,000.00
NET WORTH
$5,338.26
$8,878.29
$25,178.28
*60 Petitioner paid Federal income taxes of $21.34 and $635.17 for the years 1943 and 1944, respectively. In 1944 he purchased a diamond ring for $450. The personal living expenses of petitioner and his four dependents were not less than $3,600 for each of the years 1943 and 1944. During the calendar year 1943 petitioner had taxable net income of $6,661.37, computed as follows: Difference between opening net worth
of $5,338.26 and closing net worth of
$8,878.29
$3,540.03
Federal income taxes paid in 1943
21.34
Personal living expenses
3,600.00
$7,161.37
Less non-taxable half of profit on sale
of partnership interest in Labor
Temple Club
500.00
$6,661.37
During the calendar year 1944 petitioner had taxable net income of $20,985.16, computed as follows: Difference between opening net worth
of $8,878.29 and closing net worth
of $25,178.28
$16,299.99
Federal income taxes paid in 1944
635.17
Personal living expenses
3,600.00
Diamond ring purchased in 1944
450.00
$20,985.16
On October 5, 1945, and at other times petitioner was interviewed by representatives of the Bureau of Internal Revenue. He agreed substantially with their *61 findings and could offer no explanation as to the source of the money expended for living expenses and comprising his increase in net worth except that it was income during the years 1943 and 1944. He gave no explanation as to why the income did not appear on his returns for those years. There is a deficiency in the Federal income and victory tax of this petitioner for the calendar year 1943 in the amount of $1,087.31, and a deficiency in his income tax for the calendar year 1944 in the amount of $5,857.26. A portion of each of the deficiencies is due to fraud with intent to evade tax. Opinion The impossibility of assuming that the income shown to have been received but unreported by petitioner was unknown to him, the failure to offer any excuse for the omission of these items from his returns, and petitioner's apparent connection with activities at least in part illegal all combine to warrant the conclusion that respondent has sustained his burden of proving that part of the deficiencies were due to fraud. M. Rea Gano, 19 B.T.A. 518; Frank A. Weinstein, 33 B.T.A. 105; Rogers v. Commissioner (C.A. 6) 111 Fed. (2d) 987. We accordingly dispose *62 of the case by finding the facts covering both the deficiencies and fraud penalties in accordance with respondent's request. Decision will be entered for the respondent.