Harry D. Nassau v. Commissioner.
Nassau v. Commissioner
Docket No. 19039.
United States Tax Court
T.C. Memo 1955-55; 1955 Tax Ct. Memo LEXIS 285; 14 T.C.M. (CCH) 186; T.C.M. (RIA) 55055; March 10, 1955
John J. O'Toole, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income taxes and penalties against petitioner as follows: Amounts
Penalty
(Sec. 293(b)
Year
Tax
I.R.C. of 1939)
1943
$ 32,234.63
$ 16,169.07
1944
204,933.92
102,466.96 Petitioner did not appear at the hearing. Respondent's motion for judgment as to the income tax deficiencies for each of the years was granted at the hearing. The sole issue to be decided is whether respondent has established that some part of each deficiency herein was due to fraud with intent to evade payment of tax. Findings of Fact Petitioner is an individual residing in the city of *286 Buffalo, New York. He filed his Federal income tax return for the year 1943 with the collector for the second district of New York. He filed his return for the year 1944 with the collector for the third district of New York. During part of the taxable year 1943, petitioner was employed as a sales manager by Philip Rothman, a retailer of textiles. During the remainder of 1943 and for the major part of 1944, petitioner operated a textile business under the name of Nassau Textile Co., a sole proprietorship, hereinafter sometimes called Nassau. At the time of respondent's examination of Nassau's records, there were no original sales or purchase records available. The only business records in existence were a cash book, a general journal, and accounts receivable and payable ledgers. Respondent's agents reconstructed Nassau's sales and purchases from the available books and information on petitioner's tax returns. Only the sales listed on the accounts receivable ledgers were reported upon petitioner's returns as filed. Petitioner failed to include in his Federal income tax return filed for 1943 commissions and bonuses paid him by Rothman during that year for services rendered. During *287 the year 1943, Jack Binder, associated with Clifton Frocks, a dress manufacturing firm, purchased material from petitioner and paid him a total amount of $2,312.30. One check, in the amount of $1,703.80, was paid directly to petitioner. A second check, in the amount of $608.50, was cashed by Binder and the proceeds given to petitioner in accordance with his instructions. Neither the second check nor the proceeds thereof were included upon petitioner's books or on his 1943 income tax return. During the calendar year 1943, Eli L. Sandler, the purchasing partner in the textile firm Sandler & Giattini, purchased material from petitioner and paid him a total amount of $2,113.39. The arrangement for the purchase was that petitioner would render an invoice in a specific amount to Sandler & Giattini and that firm would pay him in cash a sum over and above this invoice price. One check, in the amount of $547.42, was cashed by Sandler and the proceeds paid to petitioner. The second check, in the net amount of $1,565.97 was given directly to petitioner in full payment of the price of $1,573.84 listed on his invoice. Neither the first check nor the proceeds thereof were included upon petitioner's *288 books or on his 1943 income tax return. Petitioner understated his net income for the taxable year 1943 in the amount of $46,283.88. This sum was composed of the $14,550 received as commissions or bonuses from Rothman, and $31,733.88 representing unreported sales of Nassau. Petitioner was indicted under section 145 (b) of the Internal Revenue Code of 1939 for the evasion of his personal income taxes for the taxable year 1943, and pleaded guilty to that count. During the year 1944, Wallace Fox, purchasing partner in the Celebrity Frocks dress goods firm, purchased material from petitioner, and paid him a total amount of $2,115.76, consisting of 4 checks, as follows: Check No. 2909 in the amount of
$1,049.83
Check No. 2907 in the amount of
374.93
Check No. 2949 in the amount of
181.84
Check No. 2986 in the amount of
509.16 The arrangement for these purchases was that Celebrity Frocks would pay the amount of the invoices and give petitioner cash amounts for the premiums. Checks No. 2907 and 2949 were cashed by Fox and the proceeds paid to petitioner. Neither checks No. 2907 and 2949 nor the proceeds thereof were included upon petitioner's books or on his *289 1944 income tax return. During the year 1944, petitioner also operated under the fictitious names of Al Weiss and Jack Newman. His method of operation included billing an invoice under these assumed names and receiving checks made out to the assumed names. Such addresses as were identified with these names were not in existence. During the year 1944, Top Notch Dress Co. was a corporation engaged in manufacturing cotton dresses. During the calendar year 1944, Top Notch purchased materials in the amount of $26,602.24 from petitioner, who used the name of Al Weiss in these transactions. The purchases were represented by the following checks: Check No. 2611 in the amount of
$7,280.23
Check No. 2612 in the amount of
5,825.61
Check No. 2637 in the amount of
5,011.11
Check No. 2794 in the amount of
8,485.29 None of these checks nor the proceeds thereof were included on petitioner's books or on his 1944 income tax return. During the year 1944, a corporation known as Smartly Klad Frocks, Inc. purchased material in the amount of $6,537.25 from petitioner, who was using the alias Jack Newman. The purchases were represented by check No. 6396 for $586.52, and the check *290 No. 5477 for $5,950.73. Neither of these checks nor the proceeds thereof were included on petitioner's books or on his 1944 income tax return. Some of the sales which were made under the names of Al Weiss and Jack Newman could be identified with purchases made by petitioner. Petitioner understated his net income for the year 1944 in the amount of $234.695.05. Petitioner admitted an understatement of income on his 1944 return in an amount of approximately $30,000. A part of the deficiency for the taxable years 1943 and 1944 was due to fraud with the intent to evade payment of tax. Opinion Our ultimate finding of fact disposes of the sole remaining issue in the case. "A failure to report for taxation income unquestionably received * * * would seem to permit of no difference of opinion. It evidences a fraudulent purpose." M. Rea Gano, 19 B.T.A. 518, 533. "* * * for each year the returns were incorrect to such an extent and in respect of items of such character and magnitude as to compel the conclusion that the falsity was known and deliberate * * *." Frank A. Weinstein, 33 B.T.A. 105, 108. Decision will be entered for the respondent.