Sara B. Gilmore v. Commissioner. Milton A. Gilmore v. Commissioner. Milton A. Gilmore and Sara B. Gilmore v. Commissioner.
Gilmore v. Commissioner
Docket Nos. 38479, 38905, 38906.
United States Tax Court
T.C. Memo 1957-85; 1957 Tax Ct. Memo LEXIS 167; 16 T.C.M. (CCH) 367; T.C.M. (RIA) 57085; May 24, 1957
*167 1. From 1938 to 1948, inclusive, petitioner Milton A. Gilmore practiced medicine in Parkersburg, West Virginia, as an eye, ear, nose, and throat specialist. For the first 4 years of such period, he practiced in partnership with another physician. For the remaining 7 years, he practiced alone. During all of such period he received rebates from an optical company for sales made by it to patients whom he referred to it. During the first 4 years of his practice he reported and paid tax on the rebates. From 1942 to 1948, inclusive, the years here in issue, when he practiced alone, he neither reported nor paid tax on the rebates which he received. The respondent determined substantial deficiencies in Milton's income tax for all of the years in issue, based, in part, on his failure to report such rebates. In 1953, Milton was convicted for criminal evasion of income tax for the years 1945, 1946, and 1947. He fled to Canada while free on bond after such conviction. He was a fugitive from justice at the time of the hearing herein and did not appear. Held, a part of the deficiencies for each of the years in issue was due to fraud with intent to evade tax, and the returns for each of such years *168 were false or fraudulent with intent to evade tax. 2. When the revenue agents commenced an investigation of Milton's returns in 1948, they discovered that he had less than $28,376.16 of known assets on December 31, 1947. His accrued income tax liability on that date was $41,465.53. He refused the agents access to his safety deposit box and refused to disclose the existence of any assets in addition to those discovered by the agents. In 1949 and 1950, he transferred over $125,000 in cash to Canadian bank accounts in the name of his wife, Sara B. Gilmore. Such transfers to Sara left petitioner insolvent and unable to pay his outstanding Federal income tax liabilities. Held, Sara B. Gilmore is liable for the deficiencies in tax, additions thereto, and interest thereon, owed by petitioner Milton A. Gilmore, to the extent of assets transferred by him to her. Charles R. Hembree, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve the following deficiencies in income tax and additions thereto: Additions to Tax
Docket No.
Petitioner
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(2)
38905
Milton A. Gilmore
1942
$1,293.32
$ 646.66
0
1943
3,934.16
1,967.08
0
1944
4,577.86
2,288.93
$274.67
1945
5,599.89
2,799.95
336.35
1946
6,027.67
3,013.84
361.66
1947
5,348.18
2,674.09
321.22
38906
Milton A. Gilmore and
Sara B. Gilmore
1948
2,766.72
1,383.36
166.00 In Docket No. 38479, respondent determined that petitioner Sara B. Gilmore was liable as a transferee of the assets of her husband, Milton A. Gilmore, for the aforementioned deficiencies *170 and additions to tax determined in Docket No. 38905, together with the following amounts of interest: Year
Interest
1942
$ 666.70
1943
1,791.98
1944
1,810.51
1945
1,878.72
1946
1,660.58
1947
1,152.50
This case was heard at Huntington, West Virginia, on January 7 and 8, 1957. The petitioners entered no appearance, and respondent's motion for judgment as to the deficiencies and additions to tax under section 294(d)(2) of the 1939 Code in Docket Nos. 38905 and 38906 was accordingly granted. The issues to be decided are: (1) Whether any part of the deficiencies in Docket Nos. 38905 and 38906 was due to fraud with intent to evade tax; and (2) whether petitioner Sara B. Gilmore is liable as a transferee of Milton A. Gilmore to the extent of the deficiencies in tax, additions thereto, and interest thereon in a total amount of $50,418.72. Findings of Fact During the years in issue, Milton A. Gilmore and his wife, Sara B. Gilmore, were residents of Parkersburg, West Virginia. Milton filed individual returns for the years 1942 to 1947, inclusive, and he and Sara filed a joint return for the year 1948. All such returns were filed with the former collector *171 of internal revenue for the district of West Virginia. During the years in issue, Milton practiced medicine in Parkersburg as an eye, ear, nose, and throat specialist. He had begun practicing medicine in Parkersburg in 1938 in partnership with another physician, which partnership continued until the years in issue, when he practiced alone. Milton kept records, including a daily log, and cash receipts and disbursement books which adequately reflected his business and other transactions, except as hereinafter set forth. Rawlings Opticians, Inc., (hereinafter referred to as Rawlings), provided physicians with prescription blanks on which was printed the following notation: "Take this prescription to Rawlings Opticians, Inc." Milton used such prescription blanks in his practice, and from the time he commenced the practice of medicine in Parkersburg in 1938, to and throughout the years in issue, he received substantial rebates from Rawlings for patients whom he referred to it. During the years in issue, Rawlings kept complete records of the total sales made to patients referred by a group of physicians, including Milton. At the end of each month, Rawlings drew one or more checks payable *172 to cash and then distributed cash in brown envelopes to the physicians. The amounts of the rebates during the years in issue amounted to approximately 30 per cent of the total sales made to patients referred by the physicians. From 1938 to 1941, inclusive, when Milton was practicing in partnership with another physician, he reported the amount of rebates received from Rawlings and paid tax thereon. During the years in issue, when he practiced alone, he did not report the rebates received from Rawlings. Milton admitted to the revenue agents investigating his returns that he had kept no records of the amounts received from Rawlings, and further admitted that he had received the money when confronted with the evidence obtained by the agents from Rawlings' books and records. Set forth below are the amounts of income reported by petitioners during the years in issue, the amounts of additional income which the respondent determined they had received, and, of such additional amounts, the portions thereof which affirmative evidence in the present record shows were rebates from Rawlings: Additional
Rebates
Income
Income
from
Year
Reported
Received
Rawlings
1942
$11,357.69
$ 3,344.21
$2,942.47
1943
19,753.19
5,846.48
5,496.05
1944
18,536.15
7,813.89
6,126.25
1945
19,510.57
9,259.90
8,004.59
1946
25,541.67
10,219.12
8,569.59
1947
23,508.06
9,273.27
8,180.15
1948
29,566.10
5,960.74
5,735.83
*173 Internal Revenue agents commenced an investigation of Milton's returns in 1948. They discovered that at the end of 1947, his net worth was $28,376.16. That sum, however, included a lot valued at $4,500.00 in which he owned only a 1/3 interest. Such sum also included investors' syndicate certificates in a total amount of $6,974.25, which Milton assigned to Sara on December 8, 1948. Milton refused the agents access to his safety deposit box, and refused to disclose any assets which he owned in addition to those discovered by the agents. On November 14, 1949, Milton opened a savings account in a London, Ontario, Canada bank in Sara's name, with a deposit of $100,000 in currency. On the same date, he opened a current account in her name with a deposit of $10,000 in currency. In 1950, he made additional deposits in the savings account in a total amount of $24,200 and in the current account of $1,650. In 1950, Sara purchased property in London, Ontario, Canada, for which she paid $14,100, plus conveyancing fees. On April 3, 1952, a grand jury filed an indictment against Milton for violation of Title 26, Section 145(b), of the United States Code for the years 1945, 1946, and 1947. Trial, *174 before a jury, in the United States District Court for the Northern District of West Virginia was subsequently held, and on January 16, 1953, the jury returned a verdict against Milton of guilty, as charged, on all three counts of the indictment, whereupon he was placed in the custody of the United States Marshal and jailed. Milton then became ill and was hospitalized. Shortly thereafter, his attorneys moved for a new trial and he was freed on bond pending a hearing on that motion. Upon his release on bond, he fled to Canada with Sara and has not returned to the United States. During the course of the trial for criminal evasion of taxes, Milton testified that he had never used a prescription blank furnished by Rawlings Opticians, Inc. He made a similar claim to the revenue agent investigating his returns and to personnel of the enforcement division of the Internal Revenue Service in Washington. At the criminal trial, the Government produced over 1,700 prescription blanks used by him, which had been furnished him by Rawlings, with the printed notation thereon: "Take this prescription to Rawlings Opticians, Inc." The respondent made a jeopardy assessment against all known assets *175 of Milton and realized the following amounts therefrom: Bank Account
$ 538.21
Accounts Receivable
19.20
Business equipment and house-
hold furnishings
3,400.00
Total
$3,957.41
During the years in issue, Sara had no income other than the interest earned on a small savings account in a Parkersburg, West Virginia, bank. A part of the deficiencies determined against Milton for the years 1942 to 1947, inclusive, and a part of the deficiency determined against Milton and Sara for 1948 were due to fraud with intent to evade tax. The returns for each of the years in issue were false or fraudulent with intent to evade tax. Opinion RICE, Judge: When this case was called for hearing, petitioner Milton A. Gilmore was a fugitive from justice, and neither he nor his wife, Sara B. Gilmore, entered an appearance. We accordingly granted the respondent's motion for judgment as to the deficiencies in tax and additions thereto under section 294(d)(2). Subsequent to the hearing, Milton filed a memorandum with the Court which, for the most part, was nothing more than a denunciation of the Internal Revenue Service and the United States District Court which heard the criminal *176 proceedings against him. The only item mentioned in that memorandum of any relevancy was his repeated allegation that the amounts received by him from Rawlings were gifts and therefore not taxable. We think the respondent has adequately carried his burden of proving that a part of the deficiencies for all of the years in issue was due to fraud with intent to evade tax. We long ago noted in M. Rea Gano, 19 B.T.A. 518, 533 (1930), that: "A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose." Petitioner's excuse here, that the amounts received from Rawlings were gifts, is a patently lame and untenable one in the face of all the evidence in the record. The significant fact that he reported the amounts received from Rawlings so long as he was in partnership with another physician, but that he failed to do so during the years when he practiced alone, evidences a deliberately fraudulent attempt to evade payment of tax on the amounts so received. Indeed, the whole course of petitioner's conduct weighs heavily *177 against him, as demonstrated by his criminal conviction for tax evasion for the years 1945, 1946 and 1947. The respondent also had the burden of proving that Sara was liable as a transferee of the assets of Milton. We think he has adequately carried his burden on that issue. At the end of 1947, Milton's accrued income tax liabilities, together with the additions to tax determined by the respondent, amounted to $41,465.53. The only known assets which the respondent was able to discover had a total value of less than $28,376.16 at the end of 1947. A part of those assets were transferred to Sara in 1948, and in 1949 and 1950 more than $125,000 in currency, which he had successfully secreted from the revenue agents, was transferred to Canadian bank accounts in Sara's name. Milton was obviously insolvent after the transfers to Sara and unable to pay the outstanding tax liabilities which he owed. We think the respondent therefore clearly demonstrated that Sara is liable in equity as a transferee of Milton. The statute of limitation was raised as a defense in Docket Nos. 38905 and 38479, but since the returns for all of the years in issue were false or fraudulent with intent to evade *178 tax, the respondent was entitled to commence proceedings for assessment and collection of the deficiencies at any time under section 276(a) of the 1939 Code. Decisions will be entered for the respondent.