Frances I. Warren v. Commissioner.
Warren v. Commissioner
Docket No. 25193.
United States Tax Court
1952 Tax Ct. Memo LEXIS 74; 11 T.C.M. (CCH) 986; T.C.M. (RIA) 52291; October 2, 1952
Harold E. Smith, Esq., and Ralph R. Quillian, Esq., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion This proceeding involves the following deficiencies in income tax and additions to tax determined by the respondent against the petitioner: 50% addition
6% addition
10% addition
Year
Deficiency
to tax
to tax
to tax
1944
$28,115.12
$14,057.56
$ 40.56
1945
4,654.31
2,327.16
279.26
1946
9,307.12
4,653.56
585.60
$976.01
1947
1,300.44
650.22
112.92
194.09
The issues are: (1) Did the respondent err in including unidentified bank deposits in the petitioner's taxable net income for the years 1944, 1945, 1946 and 1947? (2) Is *75 the petitioner liable for the 50 per cent addition to tax for fraud provided for in Section 293(b) of the Internal Revenue Code? (3) Is the petitioner liable for the 6 per cent addition to tax prescribed by Section 294(d)(2) of the Internal Revenue Code for substantial underestimate of tax? (4) Is the petitioner liable for the 10 per cent addition to tax provided for by Section 294(d)(1)(A) of the Internal Revenue Code for failure to file a declaration of estimated tax for the taxable years 1946 and 1947? (5) Is the assessment and collection of the deficiency for the year 1945 barred by the provisions of Section 275(a) of the Internal Revenue Code? Other issues raised by the pleadings with respect to minor adjustments made by the respondent for the year 1946 were waived by the petitioner at the trial. Findings of Fact The parties have filed a stipulation as to some of the facts involved herein; that stipulation is hereby adopted as part of our findings, and is incorporated herein by reference. Petitioner is a resident of Atlanta, Georgia. She filed her income tax returns for *76 the taxable years with the collector of internal revenue for the district of Georgia. Petitioner and Robert L. Warren were married in September 1923. They had three children. They were separted on or about January 22, 1946, and divorced on or about June 6, 1946. Robert L. Warren died on March 18, 1949. The Warren Produce Company commenced business in 1929. During its existence it had at various times from one to five leased stores in Atlanta which sold poultry and produce. Robert L. Warren operated this business for approximately one year. In the early part of 1930 he became bankrupt and the petitioner purchased the fixtures of the business from a bank which was one of the creditors. Petitioner operated the business from 1930 until it was discontinued in June or July, 1942, during which time her husband had nothing to do with the operation of the stores, except that he worked for petitioner as the buyer for the main store which was located at 195 Edgewood Avenue in Atlanta. Petitioner kept the books of the business, which had approximately thirty employees, and during each of the years 1941 and 1942, its total receipts amounted to approximately $100,000. In a joint return filed *77 by petitioner and her husband for 1942, a net loss of $3,837.42 from the operation of the business was reported. Petitioner ceased to operate the poultry and produce business in June, 1942. Thereafter until June 1945, when she lost the leases to the stores, she subleased to her former store managers the buildings and equipment on a profit-sharing basis, each sublessee paying her an amount equal to the rent she paid the owners of the real estate plus a percentage of the profits. In 1942, when the poultry and produce business was discontinued, Robert L. Warren entered the used-car business under the name of R. L. Warren Motor Company. He used the money in the bank account of the Warren Produce Company in the East Atlanta Bank to get started. During 1942, the operations of the used-car business were entered in the same set of books that had theretofore been used for the poultry and produce business. The bank account of the Warren Produce Company was closed out about January 1, 1943, and accounts were opened at the East Atlanta Bank in the name of the R. L. Warren Motor Company and in the name of the petitioner. Petitioner kept the books of the usedcar business during the period the *78 company engaged in business, with the exception of the year 1943, when her husband employed a bookkeeper. Petitioner's husband authorized petitioner to sign checks on the account of the company, and she signed a substantial number of checks on this account, some of which were payable to various payees, some to cash with no endorsement, and some to herself with her endorsement. Vendors often would not accept checks for cars, and her husband would on occasion send petitioner to the bank to get cash needed to purchase automobiles. She got this cash by drawing checks on the company account. Petitioner also drew checks on her personal account to pay for automobiles purchased by the company and for some of its expenses. She was at the place of business of the company about once or twice a week. Often when her husband was out of town attending auction sales, employees of the company would come to her home to get checks needed to purchase cars. Checks issued under these circumstances were on her personal bank account at the East Atlanta Bank. The employees were authorized by her husband to purchase cars when he was out of town. Petitioner considered the checks drawn on her account for or *79 on behalf of the company to be loans. No notes were given by her husband and no interest was paid by him. The following is a list of checks drawn on the account of the R. L. Warren Motor Company at the East Atlanta Bank during the years 1944 and 1945 payable to petitioner: January 3, 1944
$2,225.00
January 18, 1944
927.00
April 21, 1944
84.81
August 14, 1944
325.00
August 29, 1944
1,040.00
September 11, 1944
1,500.00
December 12, 1944
6,880.00
April 16, 1945
500.00
June 2, 1945
7,000.00 With the exception of the April 16, 1945, check for $500, which was a counter check, all of the above-listed checks were endorsed by the petitioner. The following is that portion of the "Notes Payable" account of R. L. Warren Motor Company for the years 1944 and 1945, which reflects loans made by petitioner: 1944
Debits
Credits
Feb. 18 F. R. Warren (loan)
$1,000.00
Mar. 11 F. R. Warren (loan)
2,000.00
Mar. 13 F. R. Warren (loan)
425.00
Mar. 13 F. R. Warren (loan)
1,080.00
Mar. * F. R. Warren (loan)
900.00
Mar. * F. R. Warren (loan)
1,075.00
Mar. * F. R. Warren
$ 900.00
Mar. * F. R. Warren
1,500.00
Mar. * F. R. Warren
175.00
Apr. 1 F. R. Warren
1,740.00
May 29 F. R. Warren
2,175.00
July 12 F. R. Warren (loan)
1,285.00
Oct. * Frances Warren
6,000.00
Oct. * Frances Warren
1,000.00
Dec. * Frances Warren
6,880.00
1945
Mar. * F. R. Warren
$2,500.00
Apr. * Frances Warren
4,500.00
May * Frances Warren
$1,451.75
June * Frances Warren
7,000.00
46.75
*80 The "credits" to this account record amounts paid to the company or to R. L. Warren by the petitioner, and the "debits" payments made to her. Checks were issued by petitioner on her personal account in 1944 in the amounts of $1,075 on January 29, $1,080 on February 9, $425 on March 9, and $2,000 on March 11, and in 1945 for $46.80 on October 18. Deposits were made in petitioner's bank account on March 20, 1944, December 12, 1944, May 8, 1945, and June 5, 1945, in amounts sufficient to cover the payments made of $175, $6,880, $1,451.75, and $7,000, respectively. The R. L. Warren Motor Company had a safe in its office which was used by petitioner and R. L. Warren exclusively. They were the only persons who knew the combination. The safe had two locked compartments, one for petitioner and the other for her husband. Petitioner kept some cash in her compartment during the years 1944 and 1945. During the year 1944 the petitioner had total bank deposits and withdrawals as follows: Bank balance, January 1, 1944
$ 576.12
Total Deposits
65,382.99
Total
$65,959.11
Disbursements by checks
61,715.39
Bank balance December 31, 1944
$ 4,243.72
*81 Petitioner's income tax return for the year 1944 disclosed the following.. Income - Rents Leased Stores
$7,779.51
Less: Depreciation
$637.55
Repairs
534.82
1,172.37
$6,607.14
Less: Deduction
500.00
$6,107.14
Less: Surtax Exemption
500.00
$5,607.14
Tax Liability
$1,426.07
In determining the deficiency for the year 1944, the respondent added to the income reported by petitioner in her return unidentified bank deposits of $45,958.48. In arriving at the amount of $45,958.48, he eliminated from the total deposits of $65,382.99, the rents from leased stores of $7,779.51 reported in petitioner's return, and also $11,645 which he identified as having been received by petitioner from the R. L. Warren Motor Company and deposited in her account during 1944. The checks received by petitioner from the R. L. Warren Company which were eliminated by the respondent from unidentified bank deposits for the year 1944 were the following: January 3
$ 2,225
August 29
1,040
September 11
1,500
December 12
6,880
$11,645
Petitioner received a check from R. L. Warren Company in the amount of $325, dated August 14, 1944, which *82 she deposited in her personal account on the same date. In addition to the rental income of $7,779.51 reported by petitioner and eliminated from deposits by respondent, she also received in 1944 from the sublessees $2,660 to reimburse her for rents which she paid to the store owners. She deposited this $2,660 in her bank account for 1944. She did not report this amount in her return as income received or take any deduction for rent paid. During 1944 the petitioner collected from Jesse M. Danger advance rent on a store in the amount of $188.70, which she deposited in her bank account. Danger could not get the money to operate the store and petitioner refunded to him the $188.70 and leased the store to another person. Paul J. Davis, a sublessee of one of petitioner's stores, received some out-of-state checks at a time when he had to leave to join the armed forces. He could not get credit for the amount of these checks at his bank until they cleared. As a matter of accommodation the petitioner deposited these checks, totaling $1,828.93, in her account in 1944, and in exchange therefor gave Davis three checks on her account, one for $483.35 on March 2, one for $484.45 on April 4, *83 and another for $861.13 on May 2. Petitioner purchased a bond for $750 and paid for it by check dated July 6, 1944. She held this bond for a short time and then cashed it. She deposited $700 of the proceeds in her bank account. The petitioner sold fixtures in the store at 815 Gordon Street in 1944, after she lost the lease thereon, for $2,000. Their cost was in excess of $3,000. She deposited the $2,000 in her bank account. She did not report this sale on her 1944 return as she did not think this was necessary because she had not realized any profit. Petitioner sold her home at 808 Argonne Avenue, Atlanta, Georgia, for $6,000 in November, 1944, at which time she received $1,000 earnest money; on December 11, 1944, she received $3,300 from the purchaser, who at the same time assumed the note which represented the balance of the purchase price. The property cost $4,750 in 1940. She made improvements on the house but had no record of the cost. She did not report this sale on her return because in her opinion she had realized no profit. She deposited the $4,300 cash received in her bank account. Petitioner's husband gave her $1,000 for a Christmas present in 1944. She had bought *84 a new home and he gave her this money to buy some furniture. She deposited this $1,000 in her bank account. During the year 1944 the petitioner issued checks on her personal account to or for the benefit of the R. L. Warren Motor Company as follows: Checks payable to R. L. Warren,
R. L. Warren Motor Co., or to
cash, endorsed by R. L. Warren
or the R. L. Warren Motor Co.
$16,160.00
Checks payable to others containing
notations thereon indicating pur-
chases of automobiles or other
items connected with the used-car
business
4,396.33
Checks payable to others for the ac-
count of R. L. Warren or the
R. L. Warren Automobile Com-
pany
10,983.93
$31,540.26
Petitioner received taxable income during the year 1944, which was not reported in her return for that year, in the amount of $14,385.49. During the year 1945 the petitioner had total bank deposits and withdrawals as follows: First National
Bank
East Atlanta
(North Avenue
Bank
Branch)
Bank Balance 1-1-45
$ 4,243.72
None
Total Deposits for the year 1945
40,376.03
$3,500.00
$44,619.75
$3,500.00
Withdrawals
44,089.27
2,500.00
Bank Balance 12-31-45
$ 530.48
$1,000.00
Petitioner's return for the year 1945 disclosed the following: Income - Rents on leased equipment
$1,267.66
Less: Repairs
609.30
$ 658.36
Gain on sale of residence
1,594.07
Fixtures: Sales price
$5,200.00
Add depreciation allowed
3,566.88
$8,766.88
Less: Cost or other basis
6,375.59
Capital gain (1/2)
$2,391.29
1,195.65
$3,448.08
Tax from table
$ 606.00
*85 In determining the deficiency for the year 1945, the respondent added to the income reported by the petitioner in her return unidentified bank deposits of $12,712.53. In arriving at the amount of $12,712.53, he eliminated from the bank deposits of $43,876.03 the following: Received from R. L. Warren Motor
Co. and deposited in petitioner's
account
$ 7,000.00
Rents from leased stores
1,267.66
Proceeds from sale of residence
17,695.84
Receipts from sale of store furniture
and fixtures
5,200.00
Total bank deposits identified
by respondent
$31,163.50
Petitioner received from the R. L. Warren Motor Co. a counter check $500for on April 16th which was deposited by her on April 30. In addition to the rents from leased stores of $1,267.66, reported in petitioner's 1945 return, she also received from the sublessees $616.66 to reimburse her for rent which she paid to the owners of the stores during that year. In her income tax return she did not report the $616.66 nor take any deduction of this amount for rent paid. She deposited $616.66 in her personal account during the year 1945. The capital gain of $2,391.29 reported in petitioner's return for 1945 resulted *86 from the sale of her residence for $18,500 in April of that year. She purchased the residence in December 1944. On April 11, 1945, she deposited $17,695.84 of the proceeds of the sale in her bank account. In 1945 the petitioner sold some furniture and draperies to the purchaser of her residence and received $1,167, which she deposited. The East Atlanta Bank charged back to the petitioner's account a bad check of W. B. Austin for $1,600 received from the sale of store fixtures. The check was redeposited and thus was included in deposits twice. During the year 1945 the petitioner issued checks on her account payable to cash or to R. L. Warren, as follows: April 18
R. L. Warren
$3,000.00
July 7
Cash
300.00
September 5
Cash
400.00
September 13
R. L. Warren
1,300.00 These checks were endorsed by petitioner's husband, with the exception of the check for $300 which was endorsed "Pay to the order of East Atlanta Bank - for deposit only - R. L. Warren Motor Co." On June 19, 1945, petitioner issued a check on her account for $700. This check was endorsed by the Terminal Used Car Exchange. On October 18, 1945, she issued a check on her account payable to *87 Boomershine Motors in the amount of $46.80, which was endorsed by the payee. Petitioner's income tax return for the year 1945 was filed on March 13, 1946. The notice determining the deficiency for the year 1945 was issued by the respondent on June 29, 1949. Petitioner received taxable income during the year 1945, which was not reported in her return for that year, in the amount of $8,828.87. R. L. Warren sold his used-car business in the "midsummer" of 1945, and did not engage in business thereafter except for isolated purchases and sales of cars. During the year 1946, the petitioner had total bank deposits and withdrawals as follows: East Atlanta Bank
First Nat'l Bank
Bank Balance, Jan. 1, 1946
$ 530.48
$1,000.00
Total deposits
63,890.92
0
$64,421.40
$1,000.00
Disbursements by checks
64,088.69
1,000.00
Bank Balance, Dec. 31, 1946
$ 332.71
None
Petitioner's income tax return for the year 1946 discloses the following: Rents
$ 2,007.50
Less: Expenses and depreciation
1,842.06
$ 165.44
Gain on sale of Graham-Paige stock
1,165.29
Sale of residence, capital gain (1/2 of $3,979.10)
1,989.55
Adjusted gross income
$3,320.28
Less: Deductions
Church
$ 50.00
Local taxes
121.20
Attorney fees
200.00
Truck insurance
100.00
471.20
Net income
$2,849.08
Tax
$ 452.96
*88 In determining the deficiency for the year 1946, the respondent added to the income reported by the petitioner in her return unidentified bank deposits totalling $22,775.44. In arriving at the amount of $22,775.44, the respondent eliminated from the total bank deposits of $63,890.92 the following: Rents
$ 2,007.50
Proceeds from sale of residence
18,864.59
Receipts upon sale of stock
11,100.00
Sale of stock reported on return
of R. L. Warren
[1] 9,143.39 *89 Total bank deposits identified by
respondent
$41,115.48
The $7,000 loan eliminated by the respondent represents the proceeds of a loan of $6,000 from the East Atlanta Bank which petitioner deposited on September 16, 1947, and the proceeds of a loan of $1,000 from the same bank which she deposited on June 26, 1947. The $16,510 eliminated by the respondent represents the portion of the proceeds of a sale of real estate located at 195 Edgewood Avenue which petitioner deposited in her account on June 16, 1947. This real estate was sold on June 15, 1947, for $27,500, the purchaser having assumed a mortgage loan in the amount of $10,000. The $4,773.16 eliminated by the respondent represents the proceeds of a sale of stock of the York Corporation which petitioner deposited. The $562.25 eliminated by the respondent represents salary of $650 she received from the Naval Air Station Officers' Club, less an employment agency fee of $87.75 which she paid by check dated October 11, 1947. She deposited the $650 in her account. Petitioner's son, Robert Reagin Warren, borrowed $1,250 from her in 1946 to purchase an automobile. *90 He paid the loan in 1947 and petitioner deposited the $1,250 received in her bank account. During 1947 petitioner paid the Sharp Appliance Co. $342.75 for a frigidaire. She never received it and the company made a refund. She deposited $328.75 of the amount refunded on December 4, 1947. During the year 1947, the petitioner issued checks on her account to or for the benefit of Robert L. Warren in the amount of $1,542. Petitioner received taxable income during the year 1947, which was not reported in her return for that year, in the amount of $3,331.56. The petitioner filed false and fraudulent returns for each of the years 1944, 1945, 1946 and 1947, with intent to evade tax, and part of the deficiencies determined by the respondent for each of these years was due to fraud with intent to evade tax. Petitioner and her husband filed joint declarations of estimated tax for the years 1944 and 1945 in the amounts of $3,000 and $3,500, respectively. On her income tax return for 1944, the petitioner claimed a prepayment credit for 1944 of $750, and in her return for 1945, she claimed a prepayment credit for 1945 of $606. The petitioner substantially underestimated her tax for each *91 of the years 1944 and 1945. Declarations of estimated tax were not filed by the petitioner for the years 1946 and 1947, and reasonable cause for failure to file such declarations has not been shown. Upon the return filed by the petitioner for the year 1945, she omitted and failed to disclose an amount of gross income which was in excess of 25 per cent of the gross income actually disclosed on that return. Opinion RAUM, Judge: The controversy in this proceeding relates to substantial deposits made by petitioner in her bank accounts which were not reflected in her income tax returns for the years 1944 to 1947, inclusive. To the extent that the respondent was unable to trace the source and nature of these deposits, he added them to the income reported by petitioner and determined deficiencies. Petitioner has the burden of proving that the additions made by the respondent did not represent taxable income. Most of her deposits during the taxable years were made in the East Atlanta Bank. She produced lists showing deposits made to this account and checks drawn against it during the years *92 1943 to 1947, inclusive. She also produced canceled checks showing amounts paid to or on behalf of Robert L. Warren in each of these years. She was able to identify some of the deposits as resulting from transactions reported in her returns, and some as receipts from transactions which did not result in taxable income. The substance of her testimony with respect to the remaining deposits was that they represented primarily repayment of loans made by her to Robert L. Warren or the R. L. Warren Motor Company. She also testified that she received $100 a week from her husband for household expenses or for support, and that these amounts were also included in her deposits. [2]
Petitioner testified at the trial. Her memory was good as to some deposits and bad as to others. Her bank account at the East Atlanta Bank was opened early in 1943 at about the same time that the R. L. Warren Motor Company opened a bank account in its name at the same bank. She did not recall whether she had had any substantial amount *93 either in the bank or in cash before 1943. She did not recall how much money was put into this account when it was opened or whether it was more or less than $1,000. She was unable to produce any check stubs or duplicate deposit slips that might indicate the source or nature of deposits. She did not remember the first loan made to her husband. She did not recall whether "a lot" of the transfers from her husband to her were in cash. When asked "How did he pay you back? Did he bring the money in and give it to you?", she replied, "I don't recall that." She did not keep a record of how much money her husband owed her at any time during the years 1944 to 1947, inclusive. When questioned concerning deposits of $1,500, $1,500, $1,000, $2,000, and $2,200 made in November 1944, she replied she could not identify them unless they were repayments made by her husband. She thought the $1,000 deposit might have been the down payment on a house she sold during that month. When asked about five deposits totaling $14,500 in June 1945, she testified that two of them totaling $4,200 were from the sale of fixtures, and as to the remaining $10,000 she testified, "Well, I presume it was repayments of loans *94 from Mr. Warren." She did not recall what the loans to her husband were for after he sold his business in the midsummer of 1945. She testified that any advances to her husband during 1946 were for purposes other than the automobile business. It was quite apparent from her testimony that she could not, or would not, state the source and nature of a large number of the deposits made in her accounts. Most of the documentary evidence submitted by petitioner was directed to showing how the deposits were expended rather than to showing the source and nature of the deposits. Such evidence is not enlightening where, as here, the amounts of checks issued differ materially from the amounts of the deposits. The excerpt from the notes payable account set forth in our findings indicates that petitioner did make some loans to the R. L. Warren Motor Company. No notes were issued and no interest was paid on such loans. Wherever a repayment of a loan was made and the deposit of the repayment could be identified, it has been eliminated from unidentified deposits. Petitioner's self-serving testimony that a substantial amount of deposits in each year, not reflected in the notes payable account, represented *95 repayment of any loans made by petitioner to her husband is neither persuasive nor convincing. We are satisfied, however, that during the year 1944 and the portion of the year 1945, when purchases and sales of used cars were being made, money was being deposited in petitioner's account from the operation of that business and she was issuing checks on her account for the purchase of cars and the payment of certain expenses incurred in connection with the business. Just why petitioner's account was used in this manner is not satisfactorily disclosed. Nevertheless, we have made eliminations from the deposits, in excess of those made by the respondent, to the extent that the evidence indicates that some of the deposits did not result in the realization by petitioner of gain or profit. [3] The record before us is in an unsatisfactory state, but doing our best with the materials at hand we have reached the conclusion, and found as facts, that the petitioner received unreported taxable income in 1944 of $14,385.49, in 1945 of $8,828.87, in 1946 of $22,340.74, and in 1947 of $3,331.56. *96 The next question is whether the respondent was justified in imposing additions to tax for fraud for each of the taxable years. The statute places on the respondent the burden of proving fraud. "Because direct and clear-cut proof of fraud is seldom available, it must be established by a full consideration of the records and testimony offered, the appearance and manner of the witnesses, the conduct of the taxpayer, and all conditions and circumstances surrounding the transactions which produced the disputed income." Wallace H. Petit, 10 T.C. 1253, 1257. The respondent has established that the petitioner made deposits in her bank accounts of amounts substantially in excess of those disclosed on her income tax returns for the taxable years of years and was familiar with the keeping of books; that she kept no books or other records from which the source and nature of substantial amounts of the deposits made by her in each of the taxable years could be determined; that she failed to report such amounts as income in her returns; and that she had no reasonable excuse for failing to *97 include them in her taxable income. "A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose." M. Rea Gano, 19 B.T.A. 518, 533. We are convinced that the petitioner understated her income with intent to evade tax in each of the taxable years. Consequently, the respondent's assertion of additions to tax for fraud for each of the taxable years is approved. In view of our findings that petitioner filed a false and fraudulent return for the year 1945 with intent to evade tax, and that she omitted and failed to disclose in her 1945 return an amount of gross income which was in excess of 25 per cent of the gross income actually disclosed on that return, the respondent's determination of the deficiency for that year was timely under the provisions of Sections 275 (c) and 276 (a) of the Internal Revenue Code. The remaining questions relate to the imposition of the 6 per cent addition to tax prescribed *98 by Section 294 (d) (2) of the Internal Revenue Code for substantial underestimate of tax for the taxable years 1944 to 1947, inclusive, and the imposition of the 10 per cent addition to tax imposed under Section 294 (d) (1) (A) of the Internal Revenue Code for failure to file a declaration of estimated tax for the taxable years 1946 and 1947. The petitioner makes no argument on brief that these additions to tax were improperly asserted by the respondent, and contends only that they be based upon the tax liability as determined by this Court. We agree with this contention. Decision will be entered under Rule 50. Footnotes
*. No dates shown.↩
1. The petitioner deposited $9,701 on May 29, 1946. This included the $9,143.39 received from the sale of Fruehauf Trailer stock on May 29th. R. L. Warren reported this sale in his return. The check for $9,143.39 from Courts & Company was issued to petitioner and endorsed by her. On September 17, 1945, an account was opened in the name of petitioner with Courts & Company, investment bankers. This account discloses purchases of 3,000 shares of Graham-Paige stock in September and October 1945 for $31,578.80, and that this stock was sold on January 1, 1946, for $35,442.17. As a result of this transaction, and other previous transactions, Courts & Company issued a check to petitioner in the amount of $36,280.45 on January 11, 1946. This check was endorsed by the petitioner. In her return for 1946 petitioner reported that $2,698.08 of the gain of $3,863.37 was distributed to her husband. She reported the remainder of $1,165.29 as her share of the gain with the notation "I put up $10,000 on 3000 S. Graham Paige and received $11,165.29 back, a gain of $1,165.29." A deposit of $11,100 was made in her bank account at the East Atlanta Bank on January 14, 1946. The Courts & Company account shows other purchases and sales of stock during the year 1946. In reporting her share of the gain on the Graham Paige stock, the petitioner stated that "All other trades that were in my name other than the above were and should have been in R. L. Warren's name". On February 1, 1946, after petitioner and her husband separated, the address on the Courts & Company account was changed to "Mrs. Frances I. Warren, 633 Peachtree Street, c/o Elks Club, Atlanta, Ga." On January 22, 1946, the petitioner and her husband entered into an agreement wherein, after stating that they were separated, that a petition for divorce was about to be filed, and that they were desirous of settling questions of alimony, custody of minor children, etc., the husband among other things agreed to pay petitioner $435 per month for the support, maintenance and education of their three sons for a period of five years, payments to begin on February 1, 1946. This separation agreement was incorporated in the final decree of divorce entered by the Superior Court of Fulton County on or about June 6, 1946. During the months of February to August 1946 the petitioner received $435 per month from Robert L. Warren under the agreement of January 22, 1946. One of these $435 payments was deposited by the petitioner in her bank account on June 21, 1946. The petitioner sold a residence at 361 Tenth Street in the year 1946 for $19,000 and reported the profit realized on the sale in her return for that year. She deposited $18,864.59 of the proceeds in her bank account on February 16, 1946. On February 21, 1946, petitioner issued a check on her account to R. L. Warren in the amount of $20,000. Other checks issued by petitioner on her account during 1946, which were payable to R. L. Warren, or endorsed by him, or which bore notations indicating that they were issued on his behalf, were the following: Jan. 10
$ 2,000.00
Jan. 19
250.00
Jan. 23
50.00
March 12
2,575.77
March 12
247.00
March 12
250.00
March 12
461.24
March 16
50.00
March 27
900.00
March 27
62.22
June 1
7,000.00
August 10
293.39
Sept. 13
50.00
Dec. 21
15.00
$14,204.62
On August 31, 1946, another agreement was entered into between petitioner and R. L. Warren wherein, after stating that the latter was indebted to petitioner in the sum of $17,500 and that the parties desired to make provision for the payment of that indebtedness as well as provide for a novation by mutual agreement of the original agreement of January 22, 1946, R. L. Warren conveyed to petitioner two parcels of real estate which was subject to loans aggregating $30,000, in satisfaction of the indebtedness of $17,500 and in complete and full satisfaction and performance of the agreement dated January 22, 1946. The rental income of $2,007.50 which the respondent excluded in his determination of unidentified deposits for the year 1946 was received by the petitioner from one of the properties acquired from her husband on August 31. Petitioner received taxable income during the year 1946, which was not reported in her return for that year, in the amount of $22,340.74. During the year 1947 the petitioner had total bank deposits and withdrawals as follows: Bank Balance at January 1, 1947
$ 332.71
Total Deposits, 1947
39,310.97
$39,643.68
Disbursements by checks
39,465.27
Bank Balance at December 31,
1947
$ 178.41
In her income tax return filed for the year 1947 the petitioner reported the following: Income N.A.S. Officers
Club
$ 650.00
Less: Employment Agency
Fee
87.75
$ 562.25
Long-term capital loss on
stock (1/2 of $4,500)
($2,275.13)
Long-term capital gain on
building, 195 Edgewood
Avenue (1/2 of $10,264)
5,132.00
2,856.87
Dividends received
120.00
Net rents received
1,706.99
Adjusted gross income
$5,246.11
Deductions (Standard)
500.00
Net income
$4,746.11
Exemptions
1,500.00
$3,246.11
Tax
$ 640.43
In determining the deficiency for the year 1947, the respondent added to the income reported by petitioner in her return unidentified bank deposits totaling $4,998.06. In arriving at this amount, the respondent eliminated from the total deposits of $39,310.97 made by petitioner during 1947, the following: Loan from East Atlanta Bank
$ 7,000.00
Gross rents received and deposited
These rents were received from properties R. L. Warren transferred to petitioner under the August 31, 1946, agreement.
*↩ 5,347.50
Proceeds sale of real estate de-
posited
16,510.00
Receipts from sale of stock
4,773.16
Salaries
562.25
Dividends
120.00
Total deposits identified by
respondent
$34,312.91
2. From February to August 1946, she received $435 a month for support of her children, pursuant to the separation agreement, and she contends that these payments were deposited.↩
3. As to petitioner's contention that some of her unidentified deposits represent support payments made to her by her husband, we are not satisfied after a study of all of her deposits that any of them other than the deposit of June 21, 1946, had their source in such payments. And we have excluded $435 from her income on account of the June 21, 1946, deposit.↩