Fred W. Staudt v. Commissioner.
Fred W. Staudt v. Commissioner
Docket No. 32244.
United States Tax Court
1953 Tax Ct. Memo LEXIS 20; 12 T.C.M. (CCH) 1417; T.C.M. (RIA) 53408; December 17, 1953
*20 1. Income. - Correct income for 1942 and 1943 determined. 2. Fraud. - Additions to tax for fraud sustained. Section 293 (b), Internal Revenue Code. Claude C. Pierce, Esq., for the petitioner. Newman A. Townsend, Jr., Esq., and D. Z. Cauble, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined the following deficiencies in tax: Addition to tax
Year
Tax
Deficiency
(Sec. 293(b))
1942
Income
$5,839.12
$10,937.64
1943
Income and
Victory
5,485.64
These deficiencies were determined through the use of the so-called bank deposits method. The use of this method is not contested by the petitioner. However, he does contest the respondent's action in treating certain amounts, the character of which will appear hereafter, as taxable income in the taxable years and the additions to tax for fraud. Certain other adjustments have been agreed upon and can be reflected in a Rule 50 computation. Findings of Fact Some of the facts have been stipulated. The stipulated facts are so found and the stipulation together with the exhibits *21 referred to therein are incorporated by reference. The petitioner is an individual residing in Raleigh, North Carolina. His income tax returns for 1942 and 1943 were filed on the cash basis with the collector of internal revenue for the district of North Carolina. For about 10 years prior to 1942 the petitioner was associated with a business enterprise known as Staudt's Bakery, in Raleigh, North Carolina. The business was first operated as a partnership between the petitioner and his father, F. G. Staudt, who died on January 13, 1935. The business was incorporated during January 1936 and operated as a corporation from 1936 until dissolved in 1939. Thereafter, it was operated as a sole proprietorship by petitioner until disposed of in the year 1945. Staudt's Bakery was a large and substantial business. It operated bread, cake, sales, retail sales, and garage departments each headed by a foreman. There was a plant superintendent, an office manager, and seven other office employees. In the spring of 1942 an investigation was started of certain activities of the petitioner which finally resulted in his trial in June of 1943 upon a charge of violating O.P.A. regulations. He plead *22 nolo contendere. After the trial the petitioner was sentenced to serve a two-year term in the United States Federal Penitentiary at Atlanta, Georgia. He began serving his sentence on September 1, 1943, and was released on May 1, 1944. The bakery business was operated and supervised by the petitioner during the entire year 1942 and in 1943 until his imprisonment. In 1943, sometime before the petitioner entered prison, Frank Eighme was employed to manage the business, primarily because of the petitioner's pending incarceration. Sometime during 1942 the petitioner developed a bladder ailment of a painful nature for which he was hospitalized during the following periods: Admitted
Discharged
7/23/42
7/24/42
8/13/42
8/19/42
1/26/43
2/ 1/43
4/23/43
4/26/43
8/ 7/43
8/13/43
8/23/43
9/ 1/43 While ill he was able to keep in touch with and supervise his business by telephone. In August 1943 the petitioner's physician became concerned with his mental condition and had him sent to Westbrook Sanitorium for about a week on August 13, 1943. He was in the hospital again from the time of his discharge from the Sanitorium until he entered the penitentiary. He underwent *23 further treatment in the penitentiary. The petitioner's bladder condition and his business affairs made him nervous and irritable. The petitioner filed original returns for the years 1934 through 1943 reporting the following net income: Year
Amount
1934
$ 473.33
1935
(478.74)
1936
2,085.83
1937
7,163.72
1938
5,765.55
1939
2,489.77
1940
9,329.61
1941
4,110.75
1942
43,215.55
1943
59,069.80
On or about November 23, 1943, after an investigation of the books of Staudt's Bakery was commenced, amended returns for the years 1935 to 1941, inclusive, were filed. For the years 1934 through 1941 the petitioner's correct taxable income was as follows: Year
Correct Taxable Income
1934
$ 7,141.22
1935
9,931.97
1936
21,481.96
1937
18,953.96
1938
12,732.41
1939
8,791.84
1940
23,579.77
1941
27,040.19
These amended returns were prepared by the petitioner's accountant and the additional income was determined from an analysis of the petitioner's personal bank accounts. The petitioner filed an original return for 1942 on May 15, 1943. An amended return was filed on September 4, 1943, showing additional income of $22,508.30 and *24 on July 19, 1944, a second amended return was filed indicating further additional income of $2,899.10. The source of the additional income was not disclosed. The petitioner testified "some of it might have" come from the sale of bread, mayonnaise and beer. On October 23, 1950, the petitioner signed a waiver, Form 874, consenting to the assessment and collection of 50 per cent penalties for the years 1934 to 1941, inclusive. An internal revenue agent had contacted the petitioner on May 17, 1943, for the purpose of examining the books of Staudt's Bakery. In August of 1943 the agent called the petitioner over the telephone and sought permission to examine certain personal bank accounts. The petitioner requested that the examination of his personal accounts be postponed. The petitioner gave a power of attorney to a certified public accountant on August 7, 1943. This accountant requested postponement of the investigation until an audit could be made. Thereafter the amended returns referred to above were prepared and filed. The revenue agents had not completed their investigation in 1944. Apparently nothing further was done until September 1948 when another agent was assigned to the *25 case. The respondent determined the deficiencies in question by the use of the bank deposit method. In the statutory notice of deficiency there is an adjustment for the taxable year ended December 31, 1942, in the amount of $26,522.87 which is explained as follows: "It has been determined that you realized taxable income in an amount of $71,101.11 from your business operated in the name of Staudt's Bakery in this year. Since you reported an income of only $44,578.24 from this source in your return for this year, your net income has been increased by $26,522.87, as shown below: "Unreported income disclosed
by amended return
$22,268.30
Other deposits held to consti-
tute taxable income
1,254.57
Personal withdrawals charged
to business expense
3,000.00
Unreported income from busi-
ness
$26,522.87" The item of $3,000 described as "Personal withdrawals charged to business expense" consists of the following: Estimated personal expenses paid
(by business) in cash and charged
to advertising, repairs, and other
expense accounts
$2,500.00
Personal expenses charged to ac-
count captioned "Sundry Admin-
istrative expenses"
$ 500.00
In *26 the statutory notice there is an adjustment for the taxable year ended December 31, 1943, in the amount of $6,326.09, described as follows: "It has been determined that you realized taxable income in an amount of $75,659.85 from your business operated in the name of Staudt's Bakery in this year. Since you reported income of only $69,333.76 from this source in your return for this year, your income tax net income and your victory tax net income have been increased by $6,326.09, as shown below: "Personal non-deductible legal
expense disallowed
$1,300.00
Personal withdrawals charged
to business expense
1,500.00
Deposits held to constitute tax-
able income
1,026.09
Unreported sales income de-
posited as appearance bond
2,500.00
Business income understated
$6,326.09"
The petitioner's wife estimated that the family living expenses for food, clothing and shelter during 1942 and 1943 were between $3,000 and $3,200. She had an income during that period of about $625 per month and paid most of these expenses. Ultimate Facts and Conclusions of Law During 1942 the petitioner received $590.29 as the proceeds of sick and hospital benefit insurance. In 1943 such *27 proceeds amounted to $475.75. These amounts were deposited in his bank accounts. They did not constitute taxable income. About June 4, 1943 the petitioner received $40.98 from an insurance company for damages to his car as reimbursement for a similar amount expended by him for repairs. This amount was not taxable income to the petitioner. During 1942 the petitioner received as reimbursement from his mother the sum of $606.74 which represented personal disbursements made by the petitioner for his mother, which sum was deposited in petitioner's bank account. This was not taxable income to the petitioner. During 1942 the petitioner received a refund of federal tax amounting to $57.54 which was deposited in petitioner's bank account. This was not taxable income to the petitioner. On or about December 18, 1943, petitioner's wife paid on behalf of petitioner and as his agent the sum of $1,250 to A. J. Fletcher, attorney, for services as public relations counsel and for building the goodwill of petitioner's business and to counteract the bad effects of the O.P.A. proceeding on petitioner's business. This was an ordinary and necessary business expense. The amount was reasonable. *28 On or about March 9, 1943, the petitioner paid the sum of $30 to Dr. Hugh A. Thompson for treatment of a thumb injury to Farmer S. Smith who was injured on the premises of petitioner's bakery, and Smith also was paid the sum of $20 as damages. These were ordinary and necessary business expenses. During 1943 the petitioner received a check from Staudt's Bakery for $500 which represented advances made by him to the bakery business for expenses, which sum was deposited in his personal bank account. This sum was not taxable income to the petitioner. During 1943 the petitioner's bank paid the sum of 36" out of petitioner's bank account for the North Carolina intangibles tax on bank accounts. This was not taxable income to the petitioner. On or about June 30, 1943, the sum of $2,500 in cash was deposited with the Clerk of the United States District Court for the Eastern District of North Carolina as a part of a $3,000 appearance bond in a criminal proceeding in which the petitioner was the defendant. On or about September 22, 1943, pursuant to an order of the United States District Court, the cash bond of $3,000 was returned to petitioner. On the books of account of Staudt's Bakery *29 there is an entry dated October 30, 1943 which debits cash and credits petitioner's personal account with the amount of $3,000 with the following explanation: "Cash bond check." The amount of $2,500 was properly treated as the petitioner's income. Part of the deficiency for the taxable year 1942 is due to fraud with intent to evade tax. Opinion We treat first the issues which have been raised other than the fraud issue. As we see it, the disposition of these issues depends entirely on whether the petitioner has sustained his burden of proof in showing the respondent's determination to be erroneous. In summary and based on our findings of fact, we find the respondent to be in error as follows: For the year 1942 the following items should not have been included in income: Sickness and hospital benefit in-
surance
$ 590.29
Reimbursement from mother
606.74
Tax refund
57.54
$1,254.57
For the year 1943 the following items should not have been included in income: Reimbursement for advances to
business
$ 500.00
North Carolina tax on intangibles
.36
Medical treatment and damages
for Farmer Smith
50.00
Amount paid to A. J. Fletcher
1,250.00
Sickness and hospital benefit in-
surance
475.75
Reimbursement by insurance for
car repairs paid
40.98
$2,317.09
*30 On the other items in controversy the respondent is sustained for the reason that we cannot find the petitioner has introduced evidence sufficient to overcome the presumptive correctness of the respondent's action. We see no useful purpose to be served in discussing the evidence or lack of it. Accordingly, in so far as the deficiencies in tax are concerned the petitioner, in our judgment, has failed to meet his burden of proof except as outlined above and the tax liabilities will therefore be determined in accordance with our findings of fact. The fraud issue is present only for the year 1942 and it is the respondent's burden to prove by clear and convincing evidence that some part of the deficiency is due to fraud with intent to evade tax. We think this burden has been met. This Court has on many occasions pointed out that direct proof of fraudulent intention is seldom possible and usually that such intent must be gleaned from the transactions in question and the conduct of the taxpayer relative thereto. M. Rea Gano, 19 B.T.A. 518. The petitioner filed his original return for 1942 on May 15, 1943. It showed net income of $43,215.55. On May 17, 1943, the petitioner *31 was made aware that his business books were wanted for examination by an internal revenue agent. Thereafter, on September 4, 1943, an amended return was filed on the petitioner's behalf disclosing additional income of $22,508.30 and on July 19, 1944, a second amended return was filed indicating further taxable income of $2,899.10. No clear indication of the source of this additional income is to be found in the record. Nor has any reasonable explanation been advanced as to why it was not reported in the first place. The amended returns were prepared by the petitioner's accountant and the correctness of the income is apparently conceded by the petitioner. Nevertheless, when asked where the additional income came from the petitioner testified: "I don't know where he got any of that income, because it is just out of reason." As set out in our findings of fact, this considerable understatement of income for 1942 follows sizeable understatements for each of the previous 8 years, for all of which years the petitioner has consented to the collection and assessment of the fraud penalty. The petitioner objects to the Court's giving consideration to these facts and argues they are immaterial *32 and irrelevant. We cannot agree. We think they are most material and relevant for they establish a consistent pattern of understatement with accompanying fraud and we think such a pattern is strong evidence of fraud here. Too, the filing of the amended returns for the previous years grew out of the very investigation in which the present proceeding had its genesis. The petitioner places much reliance on his physical and mental illness and argues that at the time his original 1942 return was prepared, signed and filed he relied on others for its preparation and that he was not aware that the return was in error. We are not convinced that the petitioner's illness had developed to such an extent by May 15, 1943, (the date the return was filed) that the petitioner was unaware of what he was doing. True, the return was prepared by an accountant, but there are no facts in this record which would justify a conclusion that the petitioner should be excused for the falsity of the return. Nor is there anything in the record to indicate that petitioner was an ignorant individual who could not or did not understand the responsibilities of a taxpayer to the Government. To the contrary, the petitioner *33 had for a number of years owned and managed a profitable and growing business and had filed tax returns at least since 1934. After a careful study of all the facts of record and giving consideration to our observation of the petitioner as he testified and the inferences to be reasonably drawn from the evidence, we conclude that respondent has met his burden of proving the necessary fraudulent intent. Accordingly, we hold that the respondent's action in assessing the fraud penalty for 1942 is sustained. Decision will be entered under Rule 50.